## MYERS ET AL. *v.* UNITED STATES.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF MISSOURI.

No. 158. Submitted January 11, 1924.—Decided February 18, 1924.

1. The power to punish contempt to enforce obedience inheres in all courts, as essential to the performance of their functions. P. 103.
2. Contempt proceedings are *sui generis,*—neither civil actions nor criminal prosecutions, as ordinarily understood, nor criminal prosecutions within the Sixth Amendment. *Id.*
3. The contempts defined by § 21 of the Clayton Act (October 15, 1914, c. 323, 38 Stat. 730,)—disobedience of a lawful writ, etc., by

an act such as to constitute also a criminal offense,—are not, by the Act, declared criminal. P. 104.

4. Proceedings to punish such a contempt, committed by disobedience of an injunction, are within the jurisdiction of the District Court in the division where the main cause is pending, although the contempt was committed in another division of the district. Jud. Code, §§ 51, 52 and 53, do not control the venue. *Id.*
Affirmed.

ERROR to an order of the District Court sentencing the plaintiffs in error to fine and imprisonment for contumacious disobedience of an injunction.

*Mr. Allyn Smith* for plaintiffs in error.

The injunction was granted under the Clayton Act. The prosecution was under the same act, and is purely a statutory contempt, in no manner governed by the practice of the High Court of Chancery of England.

There is a vast difference between this statutory contempt and contempts under the " inherent power " doctrine. Under the English practice courts of law punished contempts committed *facie curiæ* at once; and, in the chancery court, contempts *facie curiæ* and those consisting of failures to obey mandatory orders were punished without the intervention of a jury. All other contempts were usually punished by indictment, and the right of trial by jury was allowed. *Gompers* v. *United States,* 233 U. S. 604.

The privilege of a trial by jury is a matter of election on the part of the defendant, under the Clayton Act. The venue is controlled by Jud. Code, §§ 51, 52, 53.

A prosecution for contempt for violation of an injunction is a criminal offense. *Gompers* v. *United States, supra.*

Section 22 of the act providing: " If . . . in the judgment of the court, the alleged contempt be not sufficiently purged, a trial shall be directed at a time and place fixed by the court," does not give the judge the

power to direct the trial to be held at any place within the district. *Binkley* v. *United States,* 282 Fed. 244, distinguished.

The Sixth Amendment guarantees in all criminal prosecutions a speedy trial by an impartial jury of the State and district where the crime shall have been committed. The Judicial Code enforces this.

*Mr. Solicitor General Beck* and *Mr. George Ross Hull,* Special Assistant to the Attorney General, for the United States.

I. This proceeding to punish for contempt, though it follow the procedure prescribed by the Clayton Act, is none the less an exercise of the inherent power of the court to enforce its decrees. *United States* v. *Hudson,* 7 Cr. 32; *Anderson* v. *Dunn,* 6 Wheat. 204; *Kilbourn* v. *Johnson,* 103 U. S. 168; *Ex parte Robinson,* 19 Wall. 505; *In re Debs,* 158 U. S. 564; *Watson* v. *Williams,* 36 Miss. 331; *Cartwright's Case,* 114 Mass. 230; *Thomas* v. *Cincinnati, etc., Ry. Co.,* 62 Fed. 803; *Little* v. *State,* 90 Ind. 338.

It is urged, however, that when Congress laid its hand upon this inherent power and legislated upon the subject of contempt, restricting somewhat the scope of the power, defining more clearly its character, prescribing the procedure to be followed or limiting the punishment to be inflicted, it destroyed the unique character of a contempt and transformed it into a " statutory offense " comparable in all respects with other crimes; and, in the instant case, subject to the same provisions as to venue. We find, however, that legislation upon the subject of contempt has not, heretofore, been so construed. Judiciary Act, 1789, 1 Stat. 73, 83; Act March 2, 1831, 4 Stat. 487, 510; Rev. Stats., § 725; Jud. Code, § 268; *Ex parte Robinson,* 19 Wall. 505; *In re Chiles,* 22 Wall. 157; *Toledo Newspaper Co.* v. *United States,* 247 U. S. 402; *Middlebrook* v. *State,* 43 Conn. 257.

From 1831 until the passage of the Clayton Act in 1914 no right of trial by jury in cases of contempt was recognized. *Eilenbecker* v. *Plymouth County,* 134 U. S. 31; *Interstate Commerce Comm.* v. *Brimson,* 154 U. S. 447; *In re Debs,* 158 U. S. 564. Nor is it recognized today, excepting in the narrow field of cases in which the Clayton Act specifically provides for it. *Canoe Creek Coal Co.* v. *Christinson,* 281 Fed. 559. We have found no indication in any of the opinions of this Court that it considered the Acts of 1789 and 1831 as having any other effect than that of defining and limiting an inherent and existing power of the courts. Nor do we find anything in the purpose or language of the Clayton Act which warrants the conclusion that it created a " statutory " contempt.

It made no change in the substantive law; but merely prescribed a special procedure in the particular class of cases indicated. The act is in derogation of the inherent powers of the court, and cannot be extended by construction. *Duplex Co.* v. *Deering,* 254 U. S. 443.

II. Section 53 of the Judicial Code, which fixes the venue of prosecutions for crimes and offenses, does not apply to prosecutions for contempt.

Contempt is analogous to crime. *Ex parte Kearney,* 7 Wheat. 38; *Hayes* v. *Fischer,* 102 U. S. 121; *Gompers* v. *United States,* 233 U. S. 604.

But it differs from crime in numerous and important particulars.

Contempts are generally classified as civil and criminal. *Bessett* v. *Conkey Co.,* 194 U. S. 324; *Gompers* v. *Bucks Stove & Range Co.,* 221 U. S. 418; *In re Nevitt,* 117 Fed. 448. But even those which are clearly criminal in character, differ from ordinary crimes.

1. Criminal contempts are ᐧtried summarily. *Merchants Stock Co.* v. *Chicago Board of Trade,* 201 Fed. 20.

2. There is no right of trial by jury, save as specifically provided by statute. Contempts are not " crimes "

within Art. 3, § 2, cl. 3 of the Constitution, which provides that: " The trial of all crimes, except in cases of impeachment, shall be by jury . . ." *Eilenbecker* v. *Plymouth County,* 134 U. S. 31; *Interstate Commerce Comm.* v. *Brimson,* 154 U. S. 447; *In re Debs,* 158 U. S. 564; *McCourtney* v. *United States,* 291 Fed. 497. Nor are they " criminal prosecutions " within the meaning of the Sixth Amendment. *United States* v. *Zucker,* 161 U. S. 475.

3. Courts having no criminal jurisdiction may nevertheless punish for criminal contempt. *In re Debs,* 158 U. S. 564; *Middlebrook* v. *State,* 43 Conn. 257; *Cartwright's Case,* 114 Mass. 230; Rapalje, Contempt, 1884, § 3.

4. The defendant may, without a waiver or consent, be sentenced in his absence. *Ex parte Terry,* 128 U. S. 289; *Middlebrook* v. *State,* 43 Conn. 257.

5. An act which is a contempt of court and also a crime may be punished summarily and by indictment; and conviction or acquittal in one will not bar the other. *Chicago Directory Co.* v. *United States Directory Co.,* 123 Fed. 194; *Merchants Stock Co.* v. *Chicago Board of Trade,* 201 Fed. 20; *O'Neil* v. *People,* 113 Ill. App. 195. See also § 25 of the Clayton Act.

6. A defendant is not entitled to be confronted with the witnesses against him in open court. *Merchants Stock Co.* v. *Chicago Board of Trade,* 201 Fed. 20.

7. It is doubtful whether the immunity from self-incrimination afforded by the Fifth Amendment to defendants in " any criminal case " will relieve a defendant in contempt from examination as a witness, so long as he is not required to incriminate himself in any matter other than the contempt inquired into. *Id.*

8. Finally, what is of particular importance in the case at bar—the court against which a contempt is committed has exclusive jurisdiction to punish it, and no change of venue can be allowed. *In re Debs,* 158 U. S. 564; *Ex*

*parte Bradley,* 7 Wall. 364; *Binkley* v. *United States,* 282 Fed. 244; *McGibbony* v. *Lancaster,* 286 Fed. 129; *Dunham* v. *United States,* 289 Fed. 376; *Commonwealth* v. *Shecter,* 250 Pa. St. 282; *Penn* v. *Messinger,* 1 Yeates, 2; *Passmore Williamson's Case,* 26 Pa. St. 9; *People* v. *County Judge,* 27 Cal. 151; *Phillips* v. *Welch,* 12 Nev. 158; Rapalje, Contempt, 1884, § 13; *New Orleans* v. *Steamship Co.,* 20 Wall. 387.

Because of these points of difference this Court, while recognizing their criminal aspects, has held that contempt proceedings are neither civil nor criminal, but are *sui generis. O'Neal* v. *United States,* 190 U. S. 36; *Bessette* v. *Conkey Co.,* 194 U. S. 324.

To construe the statutes which fix the venue of criminal offenses so as to embrace contempts would seriously curtail the power of the courts to enforce their orders.

The question here raised has been recently considered and decided in favor of the contention now made by the Government. *Binkley* v. *United States,* 282 Fed. 244; *McGibbony* v. *Lancaster,* 286 Fed. 129; *McCourtney* v. *United States,* 291 Fed. 497; *Dunham* v. *United States,* 289 Fed. 376.

MR. JUSTICE MCREYNOLDS delivered the opinion of the Court.

Plaintiffs in error challenged the jurisdiction of the court below—United States District Court, Western Division of the Western District of Missouri—to try and punish them for disobeying its order, upon the ground that the contumacious acts occurred in another division of the district. Only the question of jurisdiction is here.

An information charged that plaintiffs in error wilfully disobeyed the injunction lawfully issued in equity cause, *St. Louis, San Francisco Railway Company, Complainant,* v. *International Association of Machinists, et al., Defendants,* pending in the Western Division of the Western Dis-

trict of Missouri, by attempting, within the Southwestern Division of the same district, to prevent certain railroad employees from continuing at work. The order ran against men on strike, and the cause is treated as one within the purview of the Clayton Act (October 15, 1914, c. 323; 38 Stat. 730). Sections 21, 22, 24 and 25 of that act are set out below.[1]

Counsel for plaintiffs in error maintain that ordinary contempts punishable by courts of equity without trial by jury differ radically from the " statutory contempt " here disclosed, which, under the Clayton Act, must be dealt with as a criminal offense. And they insist that §§ 51, 52

---

[1] Sec. 21. That any person who shall willfully disobey any lawful writ, process, order, rule, decree, or command of any district court of the United States or any court of the District of Columbia by doing any act or thing therein, or thereby forbidden to be done by him, if the act or thing so done by him be of such character as to constitute also a criminal offense under any statute of the United States, or under the laws of any State in which the act was committed, shall be proceeded against for his said contempt as hereinafter provided.

Sec. 22. That whenever it shall be made to appear to any district court or judge thereof, or to any judge therein sitting, by the return of a proper officer on lawful process, or upon the affidavit of some credible person, or by information filed by any district attorney, that there is reasonable ground to believe that any person has been guilty of such contempt, the court or judge thereof, or any judge therein sitting, may issue a rule requiring the said person so charged to show cause upon a day certain why he should not be punished therefor, which rule, together with a copy of the affidavit or information, shall be served upon the person charged, with sufficient promptness to enable him to prepare for and make return to the order at the time fixed therein. If upon or by such return, in the judgment of the court, the alleged contempt be not sufficiently purged, a trial shall be directed at a time and place fixed by the court: *Provided, however,* That if the accused, being a natural person, fail or refuse to make return to the rule to show cause, an attachment may issue against his person to compel an answer, and in case of his continued failure or refusal, or if for any reason it be impracticable to dispose of the matter on the return day, he may be required to give reasonable

and 53, Judicial Code, control the venue when such " statutory contempt " is alleged.

Section 51 provides that, with certain exceptions, " no person shall be arrested in one district for trial in another, in any civil action before a district court." . . . Section 52. " When a State contains more than one district, every suit not of a local nature, in the district court thereof, against a single defendant, inhabitant of such State, must be brought in the district where he resides; but if there are two or more defendants, residing in different districts of the State, it may be brought in either district, and a duplicate writ may be issued against the defendants, directed to the marshal of any other district in which any defendant resides." . . . Section 53. " When a district

---

bail for his attendance at the trial and his submission to the final judgment of the court. Where the accused is a body corporate, an attachment for the sequestration of its property may be issued upon like refusal or failure to answer.

In all cases within the purview of this Act such trial may be by the court, or, upon demand of the accused, by a jury; in which latter event the court may impanel a jury from the jurors then in attendance, or the court or the judge thereof in chambers may cause a sufficient number of jurors to be selected and summoned, as provided by law, to attend at the time and place of trial, at which time a jury shall be selected and impaneled as upon a trial for misdemeanor; and such trial shall conform, as near as may be, to the practice in criminal cases prosecuted by indictment or upon information.

If the accused be found guilty, judgment shall be entered accordingly, prescribing the punishment, either by fine or imprisonment, or both, in the discretion of the court. Such fine shall be paid to the United States or to the complainant or other party injured by the act constituting the contempt, or may, where more than one is so damaged, be divided or apportioned among them as the court may direct, but in no case shall the fine to be paid to the United States exceed, in case the accused is a natural person, the sum of $1,000, nor shall such imprisonment exceed the term of six months: *Provided,* That in any case the court or a judge thereof may, for good cause shown, by affidavit or proof taken in open court or before such judge and filed with the papers in the case, dispense with the rule to show

contains more than one division, every suit not of a local nature against a single defendant must be brought in the division where he resides; but if there are two or more defendants residing in different divisions of the district it may be brought in either division. . . . All prosecutions for crimes or offenses shall be had within the division of such districts where the same were committed, unless the court, or the judge thereof, upon the application of the defendant, shall order the cause to be transferred for prosecution to another division of the district."

None of the cited Code sections makes specific reference to contempt proceedings. These are *sui generis*—neither civil actions nor prosecutions for offenses, within the ordinary meaning of those terms—and exertions of the power inherent in all courts to enforce obedience, something they must possess in order properly to perform their functions. *Bessette* v. *W. B. Conkey Co.,* 194 U. S. 324, 326.

---

cause, and may issue an attachment for the arrest of the person charged with contempt; in which event such person, when arrested, shall be brought before such court or a judge thereof without unnecessary delay and shall be admitted to bail in a reasonable penalty for his appearance to answer to the charge or for trial for the contempt; and thereafter the proceedings shall be the same as provided herein in case the rule had issued in the first instance.

Sec. 24. That nothing herein contained shall be construed to relate to contempts committed in the presence of the court, or so near thereto as to obstruct the administration of justice, nor to contempts committed in disobedience of any lawful writ, process, order, rule, decree, or command entered in any suit or action brought or prosecuted in the name of, or on behalf of, the United States, but the same, and all other cases of contempt not specifically embraced within section twenty-one of this Act, may be punished in conformity to the usages at law and in equity now prevailing.

Sec. 25. That no proceeding for contempt shall be instituted against any person unless begun within one year from the date of the act complained of; nor shall any such proceeding be a bar to any criminal prosecution for the same act or acts; but nothing herein contained shall affect any proceedings in contempt pending at the time of the passage of this Act.

To disobey a judicial order is not declared criminal by
the Clayton Act. It recognizes that such disobedience
may be contempt and, having prescribed limitations,
leaves the court to deal with the offender. While it gives
the right to trial by jury and restricts the punishment, it
also clearly recognizes the distinction between "proceed-
ing for contempt" and "criminal prosecution." "No
proceeding for contempt shall be instituted against any
person unless begun within one year from the date of the
act complained of; nor shall any such proceeding be a bar
to any criminal prosecution for the same act or acts."
§ 25.

The Clayton Act says nothing about venue in contempt
proceedings; leaves it as theretofore. The power of the
court below to issue the enjoining order is not questioned.
By disobeying the order, plaintiffs in error defied an au-
thority which that tribunal was required to vindicate. It
followed established practice, as modified by the statute;
and we think the objections to its jurisdiction are unsub-
stantial.

The following cases are in point: *Eilenbecker* v. *Dis-
trict Court of Plymouth County,* 134 U. S. 31, 35, *et seq.;
Interstate Commerce Commission* v. *Brimson,* 154 U. S.
447, 489; *In re Debs,* 158 U. S. 564, 594, 596, 599; *Bessette*
v. *W. B. Conkey Co., supra,* pp. 326, 327; *Gompers* v.
*Bucks Stove & Range Co.,* 221 U. S. 418, 441, 450; *Bink-
ley* v. *United States,* 282 Fed. 244; *McGibbony* v. *Lan-
caster,* 286 Fed. 129; *Dunham* v. *United States,* 289 Fed.
376; *McCourtney* v. *United States* 291 Fed. 497.

*Gompers* v. *United States,* 233 U. S. 604, does not sup-
port the claim that the challenged contempt proceedings
amounted to prosecution for a criminal offense within the
intendment of § 53, Judicial Code. While contempt may
be an offense against the law and subject to appropriate
punishment, certain it is that since the foundation of our
government proceedings to punish such offenses have been

regarded as *sui generis* and not " criminal prosecutions "
within the Sixth Amendment or common understanding.
*The judgment below must be affirmed.*