ARKANSAS STATE BOARD OF OPTOMETRY *v.*
DODGE, CHANCELLOR.

4-7994

Opinion delivered September 30, 1946.

*Carl Langston,* for petitioner.

*Charles Mehaffy,* for respondent.

*Guy E. Williams,* Attorney General, for intervenor.

406 .

MINOR W. MILLWEE, Justice. The petitioners, Ritholz, make application here for a writ of prohibition directed to the judge of the Pulaski Chancery Court to restrain said court from proceeding against them in a cause instituted by the Arkansas State Board of Optometry wherein petitioners are charged with contempt of the Chancery Court by repeated violations of its injunctive orders. In a separate petition the Board of Optometry seeks the issuance of a writ of mandamus directing the Chancellor to assume and exercise jurisdiction in said contempt proceeding over certain residents of Jefferson and Sebastian counties, who are alleged to be the agents and employees of petitioners. The two causes are consolidated for hearing in this court, and for convenience the petitioners, Ritholz, will hereinafter be referred to as "petitioners" and the Arkansas State Board of Optometry will be designated "Board".

Petitioners are six non-resident members of a copartnership operating a chain of optical stores in this and other states under the trade name of National Optical Stores Company. On September 30, 1943, a decree was entered in the Pulaski Chancery Court permanently enjoining petitioners and their local agents in Pulaski county from the practice of optometry and engaging in "bait" advertising in violation of Act 94 of 1941. The decree of the Chancery Court was affirmed by this court in the case of *Ritholz* v. *Arkansas State Board of Optometry*, 206 Ark. 671, 177 S. W. 2d 410. Subsequent to the issuance of the original injunction, petitioners continued to operate in violation thereof by substituting their manager and salaried physician in the city of Little Rock. The Board instituted further proceedings resulting in punishment of the local manager and physician for contempt, the court declining to punish petitioners because they were not "physically present". The latter case was appealed to this court and affirmed on April 23, 1945, in the case of *Hudkins* v. *Arkansas State Board of Optometry*, 208 Ark. 577, 187 S. W. 2d 538.

On April 17, 1946, the Board filed a petition in the same cause praying for the issuance of an order to show cause why the petitioners and their local agents in the cities of Little Rock, Pine Bluff and Fort Smith, Arkansas, should not be punished for contempt for alleged violation of the restraining orders previously issued by the chancellor. It was alleged that petitioners had moved their place of business in Little Rock and changed their trade name to King Optical Company; that petitioners had again replaced their Little Rock manager and salaried physician and continued to practice optometry and engage in "bait" advertising in violation of Act 94 of 1941 and the injunctions of the court. The Board also charged petitioners and their local managers and physicians in Pine Bluff, Arkansas, and Ft. Smith, Arkansas, with similar violations and asked that the latter be made parties defendant to the contempt proceedings. The court entered an order for the appearance of all the defendants on May 14, 1946, to show cause why they should not be held in contempt for violation of the injunctive decrees previously issued, and a receiver was appointed to take charge of petitioners' property.

Petitioners then filed their special demurrer to the jurisdiction of the court. In the order overruling the special demurrer, the court dissolved the receivership and petitioners were directed to file a corporate bond for $2,000 to be held by the Court in lieu of the property of petitioners held by the receivers. Petitioners then filed their motion to strike certain paragraphs of the petition filed by the board, alleging that the court had no jurisdiction of the alleged agents and employees of petitioners at Pine Bluff, Arkansas, and Fort Smith, Arkansas.

On May 21, 1946, the Chancery Court entered an order holding: (1) that petitioners entered their general appearance in the cause by appealing from the decree of September 30, 1943; (2) that petitioners were served originally in the suit in accordance with the provisions of § 14 of Act 94 of 1941 which the court held to be good substituted personal service; (3) that petitioners were duly served with copies of the order to show cause why they should not be punished for contempt, in accordance

with § 1385 of Pope's Digest which the court held to be good substituted personal service; (4) that the court had jurisdiction to restrain and punish petitioners from illegally practicing optometry in Pine Bluff, Arkansas, and Fort Smith, Arkansas; (5) that the court had jurisdiction to appoint a receiver to seize the assets of petitioners to aid it in the collection of fines that might be assessed against them; (6) that the court had no jurisdiction over the resident agents and employees of petitioners in Jefferson county and Sebastian county, Arkansas, for the reason that the latter must be sued in their respective counties in accordance with § 1397 of Pope's Digest.

### The Petition for Prohibition

In their application for a writ of prohibition, petitioners allege and now earnestly insist: (1) that the proceedings against them are for criminal contempt and the trial court has no jurisdiction of the persons of petitioners and can acquire none; (2) that the record shows on its face that no service has been had on petitioners, and (3) that the trial court has no jurisdiction to appoint a receiver to take charge of the assets of petitioners.

It must be remembered that petitioners were parties defendant in the two cases formerly appealed to this court, and most of the questions now sought to be raised seem to have been previously adjudicated. The contentions of petitioners that the proceeding in the trial court is one for criminal contempt which may only be brought by the state, and in the county where petitioners reside, were made in *Hudkins* v. *Arkansas State Board of Optometry, supra,* where we said: "As to the subject matter from which the case at bar proceeds, there is, upon the one hand, clear distinction between criminal conduct and punishment, while upon the other hand there is the public's right of protection against continuing practices of unlicensed individuals who persist in an activity legislatively found to be inimical to the common welfare.

"Although the statute says, in effect, that where the prohibited practice continues it *may* be enjoined at the Board's instance, necessarily an implication arises that in appropriate cases it. is the Board's prerogative as an implement of the law to fairly present to a court of equity the facts it believes justify action. Then, if in the Court's discretion injunction follows, the right to find that there has been contemptuous disregard for the court's order is a necessary incident to the tribunal's jurisdiction to act in the first instance."

The question of the validity of the service of process upon petitioners was likewise an issue in the first appeal in *Ritholz* v. *Arkansas State Board of Optometry, supra.* This question was argued in the briefs in that case, and we there affirmed the decree entered by the trial court on September 30, 1943, which contains a finding as follows: "The Court finds that said non-resident partners, the Defendants, Ritholz, by their acts of the illegal practice of Optometry have submitted themselves to the jurisdiction of the Court in accordance with the provisions of the Act 94 of 1941, the requirements of which have been fully met by notice and service of summons, having the same legal force and validity as if served personally." The court also retained jurisdiction for any further proceedings.

Section 14 of Act 94 of 1941 provides that any non-resident person, firm or corporation that performs acts in this state which constitute the practice of optometry, except when done by those having a designated agent for service within the state, shall be deemed equivalent to the .appointment of the Secretary of State as agent for service of process. After providing for service on the Secretary of State, it is then required that a notice of such service and a copy of the process be sent the non-residents by registered mail, and the defendant's return receipt or the affidavit of the plaintiff, or his attorney, of compliance with the requirement, are placed in the record. It is further provided that such service shall be given "the same legal force and validity as if served on such person, firm or corporation personally."

The Legislature has, therefore, by Act 94 of 1941, provided that the practice of optometry within the state by non-residents shall operate as an implied consent to the form of service of process provided in § 14 of the act. The record in this case reflects that there has been a rigid compliance with the terms of this section.

The record shows that a summons to answer the order to show cause issued by the chancellor in the instant proceeding was served upon the manager of petitioners' Little Rock store with copies of the order to show cause and prior injunctive decrees of the court attached to the summons. The trial court held this to be good substituted personal service under § 1385, Pope's Digest, which is Act 74 of the Legislature of 1935. This section authorizes service on any individual, partnership, or unincorporated association doing business at two or more places in this state, on actions arising out of the business done, by service on the agent in charge of the local business. The venue of the action is by the act fixed in any county where such business is done.

The forms of service authorized by both § 14 of Act 94 of 1941 and Pope's Digest § 1385 were prompted by and patterned after the so-called non-resident motorist statutes. Dr. Leflar, in his excellent treatise on *Conflict of Laws,* points out the development in recent years of a new theory underlying the creation of jurisdiction over the person in many cases where actual personal service cannot be obtained. This principle is that the causing of acts which are subject to regulation under the police power to occur in a state should be the basis of jurisdiction in the courts of that state over the person causing the acts, as to causes of action arising out of the acts done.

In § 34, p. 106, of his work, Dr. Leflar says: "Considerable state regulation of the doing of local business is permissible under the police power. It has long been known that, with corporations, this permissible regulation includes subjection of the foreign principal to substituted service of process in suits on causes of action arising out of the business done. It is now realized that

this is true also when the foreign principal is a private person, or several private persons associated together as a partnership or other association. The basis of jurisdiction is the fact of doing acts or causing them to be done in the state, the acts being of a type so affecting the public interest, in that they are apt to give rise to causes of action in local citizens, that such police regulation as is represented by these statutes is allowable. The operation of motor vehicles, and the carrying on of a business, fall within this type of acts clearly, and it is not difficult to imagine that similar statutes may in time be enacted in reference to other local activities out of which causes of action frequently arise. After all, the effect of such a statute is merely to make it as easy to sue a nonresident as it already is to sue a resident who does the same local acts.''

The Iowa court had occasion to construe a statute of that state with substantially the same provisions as § 1385, Pope's Digest, in the case of *Davidson v. Henry J. Doherty & Co.,* 214 Iowa 739, 241 N. W. 700, 91 A. L. R. 1308. The court said: ''The statute in question does not in any manner abridge the privileges or immunities of citizens of the several states. It treats residents of Iowa exactly as it treats residents of all other states. The citizens of each state of the United States are, under this statute, entitled to all the privileges and immunities accorded citizens of this state.

''The justice of such a statute is obvious. It places no greater or different burden upon the nonresident than upon the resident of this state. . . . A nonresident who gets all the benefit of the protection of the laws of this state with regard to the office or agency and the business so transacted ought to be amenable to the laws of the state as to transactions growing out of such business upon the same basis and conditions as govern residents of this state. . . .

''It (the statute) provides that a nonresident, as well as a resident, doing business in this state through an office or agency, is subject to actions *in personam* in this state as to such transactions *only* as grow out of

said office or agency, and then only where substituted service is made on such agent. When a nonresident defendant establishes an office or agency for the transaction of business in any county in this state under this statute, he thereby voluntarily appoints his own agent, in charge of said office or agency, as one upon whom substituted service in actions *in personam,* growing out of that office or agency, may be·made. Service of summons upon such duly appointed agent as to transactions growing out of such agency meets every essential requirement of due process of law.'' The holding of the Iowa court was affirmed by the Supreme Court of the United States in *H. L. Doherty & Co.* v. *Goodman,* 294 U. S. 623, 55 S. Ct. 533, 79 L. Ed. 1097.

In *Wilentz* v. *Edwards,* 133 N. J. Eq. 488, 33 A. 2d 297, affirmed 134 N. J. Eq. 522, 36 A 2d 423, where the attorney general of New Jersey sought to restrain the sale of securities within the state by a nonresident, the court held a statute providing for service of process by registered mail directed to defendant's address outside the state to be valid. In discussing the validity of the· service the court said: ''The argument advanced in the instance case is the same as that advanced in *Stevens* v. *Television, Inc.,* 111 N. J. Eq. 306, 162 A. 248, namely, that this suit is one *in personam,* and that therefore there can be no personal judgment entered without personal service within the State, defendant's counsel citing *Pennoyer* v. *Neff,* 95 U. S. 714, 24 L. Ed. 565. This, however, as pointed out by Vice Chancellor Backes in *Stevens* v. *Television, Inc., supra,* 'is not a case seeking a personal recovery against the defendants; it is to foreclose them. The state is not asking anything of them; it wants nothing from them.' The State has the power to ordain against imposition in the sale of fraudulent securities. *Hall* v. *Geiger-Jones Co.,* 242 U. S. 539, 37 S. Ct. 217, 61 L. Ed. 480, L. R. A. 1917F, 514, Ann. Cas. 1917C, 643; *Merrick* v. *N. W. Halsey & Co.,* 242 U. S. 568, 37 S. Ct. 227, 61 L. Ed. 498. Since the State has such power to ordain against imposition upon the guillible, it may prescribe the means of protection and the procedure for

enforcement of its laws including substituted service, such as the defendant admits he received.''

Under these authorities, we think the trial court correctly held that it had jurisdiction of the persons of petitioners by service of process in the manner reflected by the record. We are not unmindful of our approval of the action of the chancellor in declining to punish petitioners in the case of *Hudkins* v. *Arkansas State Board of Optometry, supra,* because they were not ''physically present''. It is true, that the trial court is powerless to compel the physical presence of petitioners for punishment, but we do not mean to say that property owned and repeatedly used by them in violation of Act 94 of 1941 could not be seized in satisfaction of a fine imposed against them where the court has jurisdiction of the contempt proceeding. After appointing a receiver who took charge of the properties of petitioners, the trial court dissolved the receivership and required petitioners to post bond in lieu of the property that had been seized. The writ of prohibiton does not issue to prohibit a trial court from erroneously exercising its jurisdiction, but issues only when that tribunal is wholly without jurisdiction, or is proposing to act in excess of its jurisdiction. *Bassett* v. *Bourland,* 175 Ark. 271, 299 S. W. 13. The erroneous exercise of jurisdiction may be corrected by appeal, and, since we hold that the trial court had jurisdiction of the persons of petitioners and the subject matter, we will not determine here whether the trial court has erroneously exercised its jurisdiction in the particular manner in which it proceeded in the receivership.

Receivership is generally regarded as a remedy of last resort. 45 Am. Jur., Receivers, § 26. However, there is authority for the resort to such provisional remedy to be found in the case of *Blackmer* v. *United States,* 284 U. S. 421, 52 S. Ct. 252, 76 L. Ed. 375. In that case, Blackmer, a citizen of the United States residing in Paris, France, was found guilty of contempt of the Supreme Court of the District of Columbia for failure to respond to subpoenas requiring him to appear as a witness in the

trial of a criminal case. The subpoenas were served on Blackmer in Paris, France, and by publication of the process in a District of Columbia newspaper. Upon his failure to appear at the trial to which he had been subpoenaed as a witness, Blackmer's property was seized by the court and sold to satisfy a fine for contempt. Disposing of contentions similar to those made by petitioners in the instant case, the court, speaking through Chief Justice Hughes, said: ''The further contention is made that, as the offense is a criminal one, it is a violation of due process to hold the hearing, and to proceed to judgment, in the absence of the defendant. The argument misconstrues the nature of the proceeding. 'While contempt may be an offense against the law and subject to appropriate punishment, certain it is that since the foundation of our government proceedings to punish such offenses have been regarded as *sui generis* and not ''criminal prosecutions'' within the Sixth Amendment or common understanding.' *Myers* v. *United States,* 264 U. S. 95, 104, 105, 44 S. Ct. 272, 273, 68 L. Ed. 577. See, also, *Bessette* v. *Conkey,* 194 U. S. 324, 336, 337, 24 S. Ct. 665, 48 L. Ed. 997; *Michaelson* v. *United States,* 266 U. S. 42, 65, 66, 45 S. Ct. 18, 69 L. Ed. 162, 35 A. L. R. 451; *Ex parte Grossman,* 267 U. S. 87, 117, 118, 45 S. Ct. 332, 69 L. Ed. 527, 38 A. L. R. 131. The requirement of due process in such a case is satisfied by suitable notice and adequate opportunity to appear and to be heard. *Cf. Cooke* v. *United States,* 267 U. S. 517, 537, 45 S. Ct. 390, 69 L. Ed. 767.

''The authorization of the seizure of the property belonging to the defaulting witness and within the United States, upon the issue of the order to show cause, why he should not be punished for contempt (§ 5 of the Act [28 USCA § 715]), affords a provisional remedy, the propriety of which rests upon the validity of the contempt proceeding. As the witness is liable to punishment by fine if, upon the hearing, he is found guilty of contempt, no reason appears why his property may not be seized to provide security for the payment of the penalty. The proceeding conforms to familiar practice

where absence or other circumstance makes a provisional remedy appropriate.''

The remedy of sequestration has been held to be available in equity against a person or corporation for contempt. 47 Am. Jur. 697; 17 C. J. S. 136. We can see no valid reason why property that is continuously used in violation of the repeated injunctions of the court and the laws of this state, may not be seized to provide security for the payment of fines which are imposed on the owners of such property over whom the trial court has jurisdiction.

It follows that the petition for writ of prohibition will be denied. It is so ordered.

### The Petition for Mandamus

The Board seeks by mandamus to compel the Pulaski Chancery Court to assume and exercise jurisdiction over four residents of Jefferson and Sebastian counties who are alleged to be the agents of petitioners and violating the injunctions of the trial court in the counties of their residence.

Section 1397 of Pope's Digest provides: ''All actions for debts due the State of Arkansas, and all actions in favor of any State officer, State board or commissioner, in their official capacity, and all actions which are authorized by law to be brought in the name of the State, and all actions against such board or commissioner or State officer, for or on account of any official act done or omitted to be done, shall be brought and prosecuted in the county where the defendant resides.''

Since the proceedings in the chancery court were instituted by the State Board of Optometry, we think venue is clearly fixed by the terms of the statute in the counties of Jefferson and Sebastian insofar as the defendants residing in those counties are affected. The Board relies on the case of *Beeson* v. *Chambers,* 192 Ark. 265, 90 S. W. 2d 770. In that case all the parties to a foreclosure suit were residents of Logan county and Beeson, a resident of Pulaski county, removed a part of the mortgaged chattels, which were in possession of

a receiver appointed by the court, from Logan county. Service of an order to show cause why he should not be punished for contempt of the Logan Chancery Court was had on Beeson in Pulaski county. This court held the service valid. The situation is entirely different from that presented in the instant case. The resident defendants of Jefferson and Sebastian counties are not charged with the commission of acts in Pulaski county in contempt of the Pulaski court. They are charged with contempt of the Pulaski Chancery Court by acts committed in the counties of their residence, and the statute clearly fixes the venue of any action against them in the counties where they reside. The trial court correctly so held, and the petition for mandamus will, therefore, be denied.