**CRAIG v. BAIRD.**

**GAZAN v. BAIRD.**

Nos. 12300, 12322.

United States District Court
E. D. Michigan, S. D.

Dec. 29, 1952.

Joseph W. Louisell, Detroit, Mich., for petitioner George B. Schaeffer and Hugh Francis, Detroit, Mich., of counsel.

Frank G. Millard, Atty. Gen., of Michigan, Percival R. Piper, Asst. Atty. Gen., of Michigan, John R. Kirwan, Detroit, Mich., for respondent.

KOSCINSKI, District Judge.

Separate writs of habeas corpus were issued by this court on individual applications of Pearl Craig and Max Gazan, whom we will refer to hereafter as petitioners, on representations that they were deprived of their constitutional rights under the 14th Amendment at a contempt of court hearing in the Circuit Court for Wayne County, for disobeying an injunction issued by that court, involving claimed unlawful acts as pickets during a strike called by two labor unions.

Pearl Craig received a sentence of fifteen days in the county jail and a fine of $150, and Max Gazan was sentenced to a term of thirty days in the county jail and a $250 fine by Circuit Judge Joseph A. Moynihan, who stayed the proceedings until disposition of appeals. Upon issuance of the habeas corpus writs out of this court both petitioners were allowed to give bail while this court considered the issues involved here.

Max Gazan was captain of the pickets and Pearl Craig was one of the pickets. Both were members of one of the unions calling the strike at Richard Greenfield's Drive-in, 20500 Greerfield Avenue, in the City of Detroit. Petitioner Pearl Craig was employed by Greenfield's for a period of eight days before the strike occurred.

Following imposition of their sentences, petitions for certiorari filed by them were denied by the Supreme Court of Michigan and the Supreme Court of the United States.

The court history of this case originated with the filing of a bill of complaint in the Wayne Circuit Court by Richard Greenfield, Inc., operating a Drive-in at 20500 Greenfield Avenue, Detroit, against the Hotel & Restaurant Employees' and Bartenders' International Union A. F. of L. No. 705, Chefs', Cooks', Pastry Chefs', Local Union, No. 234, Max Gazan, George Asher, James Maceroni, Harvey Morris, Roger Foster, John Doe and Richard Roe, Defendants. In that complaint, plaintiff represented, among other things, that as a result of a strike called by the defendants

on July 24, 1951, disorders and disturbances therein described were indulged in by defendants and their pickets leading to outbreaks which seriously interfered with plaintiff's business operations in catering to the eating requirements of its customers. Two of the defendants were described as labor unions, and the individual defendants as officers, employees, and agents of the union, and John Doe and Richard Roe as business agents and acting in other capacities for the defendants. There were many serious allegations of misconduct by defendants while picketing plaintiff's business place. Plaintiff asked the court to limit defendants to lawful picketing by issuance of a temporary and permanent injunction restraining defendants from continuing acts of unlawful picketing and interfering with plaintiff's business in the particulars described in the prayer of the bill.

On July 26, 1951 the court issued an order to show cause why an injunction should not be issued. The order to show cause provided that a true copy of the order be served upon Leon Cousens, attorney for the defendants, as good and sufficient service upon all defendants.

Following several days' hearing, on August 8, 1951 "upon full, complete and extensive argument of counsel for both parties," a temporary injunction was issued restraining the Hotel & Restaurant Employees' Local Union No. 705, and the Chefs', Cooks', Pastry Chefs', Local Union No. 234, their officers, agents, employees and pickets from mass picketing, unlawful interference with the operation of plaintiff's business or its patrons, engaging in acts of violence and other unlawful acts against plaintiff, its agents, employees, customers, suppliers, and other persons having lawful business with the plaintiff. The temporary injunction also restrained secondary boycotts and other acts of interference with plaintiff's business at plaintiff's Drive-in already described, and also at two other Drive-ins operated by plaintiff in the City of Detroit.

Within a short time thereafter a petition was filed with the court by Sidney Smith, plaintiff's General Manager, representing in detailed manner violations by defendants of the court's injunction. The petition prayed that the "said defendants, their officers, agents, employees, pickets and confederates" be compelled to appear in court on September 14, 1951 and show cause why they should not be punished for violations and contempt of the court's injunction and order, also for modification of the injunction.

Affidavits of three patrons of plaintiff's establishment were filed in support of the petition.

The order to show cause was directed to the two labor unions "their officers, agents, employees, pickets, and confederates," and twelve named individuals, including petitioner Max Gazan. It was made returnable September 14, 1951, and those named and described were ordered to show cause "why the defendants and their individual officers, agents, employees, pickets, and confederates should not be punished for contempt of court in disobeying and violating the injunction * * *."

The court specifically ordered that a copy of the order to show cause be served upon said defendants, their officers, agents, employees, pickets, and confederates, by serving a copy thereof upon the offices of said defendants Hotel & Restaurant Employees' Local Union No. 705, and the Chefs', Cooks', Pastry Chefs', Local Union No. 234, and upon the office of their attorney, Leon Cousens, Esquire, on or before midnight, September 10, 1951.

Answers to the order to show cause were filed by the two unions as such, and they also demanded that they be furnished with the names of the persons alleged to have committed each particular act and the persons charged with committing such acts in violation of the injunction, together with time and place of such acts, or in the alternative that the order to show cause be quashed. This request was signed and sworn to by Leon A. Cousens, defendant's counsel.

A motion to dismiss the order to show cause for alleged failure to comply with Michigan law was filed by defendant Max

Gazan, in a special appearance by M. F. Wolfgang, his attorney.

The partial record of the circuit court proceedings made available to the court does not disclose the disposition of the requests and motions.

The hearing on the order to show cause in the circuit court occupied the court's time for a period of nine weeks, with attorneys Leon Cousens, George B. Shaeffer, representing Hotel & Restaurant Employees Local No. 705, and Francis K. Young, representing Chefs', Cooks', Pastry Chefs', Local No. 234, and Moe F. Wolfgang, attorney for Max Gazan.

On December 6, 1951 the court filed its opinion finding the two unions, Max Gazan, Pearl Craig, and two others guilty of contempt of court "in openly, brazenly, contemptuously, flouting the court's authority". The sentencing of petitioners followed on December 19, 1951.

At the hearing in this court Pearl Craig testified that she was asked by the Union to appear in court on a contempt hearing in the circuit court, on the order to show cause; that she was in court on the first day of that hearing and on several other days during that hearing, that she discussed the case with the attorneys for the union and with others, that she was placed on the witness stand by Leon Cousens, the union attorney, and testified in matters concerning the strike for one whole day and part of another day, following charges made against her in open court by witnesses who testified as to her conduct and activities during the picketing. She stated that she appeared in court voluntarily.

Max Gazan testified here that he was in court nearly every day of the nine weeks' hearing. He had his own counsel representing him during the proceedings. He testified as a witness in the circuit court hearing.

It is the claim of petitioner Pearl Craig that she was deprived of due process, because, (1) she was not arraigned as a defendant in a criminal case, (2) she was not informed specifically as to her conduct constituting violation of the injunction, (3) that she was not represented by counsel, (4) that she was not served personally with an order to show cause, (5) she was never apprised of being a defendant in a criminal contempt proceeding, (6) in finding her guilty of contempt the court did not particularize her conduct constituting contempt.

Max Gazan claims that he was deprived of due process because, (1) the initiated proceedings were not adequate to fairly apprise him of the charges made against him, as well as the court's failure to grant his motion for a bill of particulars, and (2) that in finding him guilty the court failed to determine the particulars of his contemptuous conduct.

It is obvious from the hearing in this court that the contempt proceedings in the circuit court resulted from serious disturbances and outbreaks by numbers of persons among whom were representatives and employees of the two unions, and their agents, pickets, and confederates. In vindicating its authority to issue and enforce the temporary injunction, the court in the nine weeks' hearing investigated and inquired into such disturbances and outbreaks to determine any violations of the court's injunction and the persons guilty of such violations.

On the day of sentence Moe F. Wolfgang, Max Gazan's attorney, informed the court that "he would also represent Pearl Craig".

Contempt of court proceedings may be civil or criminal, or both. On the other hand, contempt of court has been sometimes characterized as a quasi-criminal proceeding, especially when it results in the imposition of a fine and jail sentence. These proceedings in most States are regulated by statute and court rule, as in Michigan, C.L.1948, §§ 605.1–605.31, M.S.A. §§ 27.511–27.541. Michigan Court Rule 8, Section 6, provides that when the object is to bring a party into contempt for disobeying an order of the court, the service shall be on such party personally, unless otherwise specially ordered by the court. As already stated, the judge in the circuit court proceedings ordered service of the order to show cause upon the two union

Locals as such, and also on their attorney Leon Cousens, although in the order to show cause some individuals were mentioned by name and others by description of their status, affiliation, or strike activities.

Both petitioners were in the Circuit Court on the first day of the hearing and at other times during the proceedings, there is no claim made that they did not know of the provisions and contents of the temporary injunction previously issued by the Circuit Court, nor has any claim been made by either of them in this court that they did not violate the injunction. Both had the benefit of counsel, heard the testimony of witnesses involving them in the disobedience of the court's injunction, conferred with counsel during the proceedings and both testified in their own behalf. Although a transcript of the entire proceedings held in the Circuit Court was in the possession of counsel for one of the union locals, no portion of it concerning the testimony involving petitioners was made available to this court.

■■ The order to show cause why all defendants, named and described, should not be adjudged guilty of contempt of court, fairly and fully informed all the interested parties of the nature of the disobedience of the court's injunction. In contempt proceedings of this nature there is no requirement of "arraignment", such as is generally required under a criminal indictment or information. The order to show cause and the petition on which it was based, together with the accompanying affidavits constituted the information and charges made against the defendants and all those associated with them as described in the order to show cause. Both petitioners were informed of the nature of the charges.

■ Jurisdiction of the person is obtained by service of process or by the voluntary appearance of the party in the progress of the cause. Cooper v. Reynolds, 10 Wall. 308, 77 U.S. 308, 19 L.Ed. 931, and In re McHugh, 152 Mich. 505, at page 510, 116 N.W. 459, at page 461, where the court said: "no petition or affidavit was presented to the court as a foundation for the pro-

ceedings. * * * The respondents voluntarily appeared in court, and were given the same opportunity to make their defense that they would have had upon the filing of a petition or affidavit and the issuance of an order to show cause. They were not seized upon the capias, but came directly from a foreign country (Canada) into the court, and voluntarily submitted to its jurisdiction. It should require no argument to show that they had waived all irregularities in initiating the proceedings." See also, Moore's case, 63 N.C. 397, Hawkins v. State, 125 Ind. 570, 573, 25 N.E. 818; In re Savin, 131 U.S. 267, 9 S.Ct. 699, 33 L.Ed. 150; Randall v. Brigham, 7 Wall. 523, 540, 74 U.S. 523, 540, 19 L.Ed. 285, where the court said: "(the respondent) was afforded ample opportunity to explain the transaction and vindicate his conduct. He introduced testimony upon the matter, and was sworn himself."

■■ It is elementary that a person may submit to the jurisdiction of the court by a voluntary appearance. In Smilgus v. Smilgus, 328 Mich. 19, 22, 42 N.W.2d 898, 900, involving a contempt of court, the court said "defendant and his counsel appeared at the hearing on the petition, cross-examined plaintiff's witnesses, defendant testified in his own behalf, and offered other testimony. Having thus actually submitted to the jurisdiction of the court, appellant could not thereafter challenge the validity of the service of notice of hearing on the ground that the court did not obtain 'jurisdiction over the person of the defendant.'"

In Craig v. Kelley, 311 Mich. 167, 179, 18 N.W.2d 413, 418, the court held that "The fact that Charles D. Kelley was not an original party in the case or named in the restraining order does not clear him of contempt. The statute, 3 Comp.Laws 1929, § 13910, as amended by Act No. 29, Pub. Acts 1931 [Comp.Laws Supp.1940, § 13910] Stat.Ann. § 27.511, provides:

"'Every court of record shall have power to punish by fine or imprisonment, or both, * * *

"'5. Parties to suits, attorneys, counselors, *and all other persons,* for

\* \* \* any other disobedience to any lawful order, decree or process of such court.'"

[7, 8] Courts have the inherent right and power to enforce obedience to their orders and decrees independent of the statute. In re Dingley, 182 Mich. 44, 148 N.W. 218. Commitments for contempt can not be impeached for mere irregularity.

In Blackmer v. United States, 284 U.S. 421, 52 S.Ct. 252, 76 L.Ed. 375, the court held that the order to show cause was sufficient to apprise the witness of the nature of the proceedings. Continuing, 284 U.S. at page 440, 52 S.Ct. at page 256, the court said:

"The further contention is made that, as the offense is a criminal one, it is a violation of due process to hold the hearing, and to proceed to judgment, in the absence of the defendant. The argument misconstrues the nature of the proceeding. 'While contempt may be an offense against the law and subject to appropriate punishment, certain it is that since the foundation of our government proceedings to punish such offenses have been regarded as *sui generis* and not "criminal prosecutions" within the Sixth Amendment or common understanding.' Myers v. United States, 264 U.S. 95, 104, 105, 44 S.Ct. 272, 273, 68 L.Ed. 577. See, also, Bessette v. [W. B.] Conkey Co., 194 U.S. 324, 336, 337, 24 S.Ct. 665, 48 L.Ed. 997; Michaelson v. United States [ex rel. Chicago, St. P., M. & O. R. Co.], 266 U.S. 42, 65, 66, 45 S.Ct. 18, 69 L. Ed. 162; Ex parte Grossman, 267 U. S. 87, 117, 118, 45 S.Ct. 332, 69 L.Ed. 527. The requirement of due process in such a case is satisfied by suitable notice and adequate opportunity to appear and to be heard. Cf. Cooke v. United States, 267 U.S. 517, 537, 45 S. Ct. 390, 69 L.Ed. 767."

■ Contempt proceedings are *sui generis*. They are criminal in their nature, in that the party is charged with doing something forbidden and, if found guilty, is punished. They may be resorted to in civil, as well as criminal actions, and also independently of any civil or criminal action. Bessette v. W. B. Conkey Co., 194 U.S. 324, 326, 24 S.Ct. 665, 48 L.Ed. 997. They are "exertions of the power inherent in all courts to enforce obedience, something they must possess in order properly to perform their functions." Myers v. United States, 264 U.S. 95, 44 S.Ct. 272, 273, 68 L.Ed. 577. In re Manufacturers Trading Corp., 6 Cir., 194 F.2d 948, 956.

■ The petitioners have failed in their proof to show that they were deprived of due process under the 14th Amendment of the United States Constitution, as claimed, in the particulars stated.

In Fawick Airflex Co., Inc., v. United Electrical Radio & Machine Workers of America, Local 735, C.I.O., Ohio App., 90 N.E.2d 610, a case which in many respects parallels the situation presented here, the court stated: "All eighteen appellants were members of the Union and as such were parties to the injunction suit by virtual representation. The proscriptive terms of the decree extended to all members of the Union." In this case appeal was dismissed in 153 Ohio St. 589, 92 N.E.2d 689.

The writs of habeas corpus issued in this court will therefore be discharged, petitioners' bonds cancelled and petitioners returned to the custody of the sheriff of Wayne county.

Since there is no indication in the Michigan Supreme Court's denial of leave to appeal by certiorari as to the reason for such denial, it may well be that the action taken by that court was made on the grounds of State procedural defects. In any event, it is at least doubtful that petitioners have exhausted their state remedies before coming here. McCrea v. Jackson, 6 Cir., 148 F.2d 193, 197, 198. There, although the Supreme Court of Michigan affirmed petitioner's conviction, People v. McCrea, 303 Mich. 213, 6 N.W.2d 489, and certiorari was denied by the Supreme Court of the United States, Id., 318 U.S. 783, 63 S.Ct. 851, 87 L.Ed. 1150, it was held that petitioner had not exhausted available state remedies in Michigan, since by the Constitution of the State of Michigan, as well as legislative enactments, petitioner had a right to

proceed by habeas corpus, and other appeal proceedings. See also, In re Collins, 329 Mich. 192, 45 N.W.2d 31, and In re White, 327 Mich. 316, 41 N.W.2d 882, and many other contempt cases heard and decided by the Supreme Court of Michigan in proceedings by habeas corpus and ancillary writ of certiorari.

28 U.S.C.A. § 2254 plainly provides that petitioner for habeas corpus in the federal court must have exhausted the remedies available in the courts of the state if he has the right under the law of the state to raise, by any available procedure, the question presented. See also White v. Ragen, 324 U.S. 760, 767, 65 S.Ct. 978, 89 L.Ed. 1348, where the court stated that any other state remedies, if available must be exhausted before any application to the federal district court.