**UNITED STATES of America, Plaintiff,**

**v.**

**TWENTIETH CENTURY–FOX FILM CORPORATION, and Leila J. Goldstein, Defendants.**

**No. 88 Cr. 732 (ELP).**

United States District Court, S.D. New York.

Nov. 10, 1988.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, Fred E. Haynes, Ann Lea Harding, James Tierney, U.S. Dept. of Justice, Antitrust Division Attys., Washington, D.C., for U.S.

Williams & Connolly by William E. McDaniels, Steven R. Kuney, Washington, D.C., for defendant Twentieth Century–Fox.

Nussbaum, Owen & Webster by Earl C. Dudley, Jr., Washington, D.C., for defendant Leila J. Goldstein.

## MEMORANDUM OPINION AND ORDER

PALMIERI, District Judge:

Defendants are charged with criminal contempt pursuant to 18 U.S.C. § 401(3) for violating the injunctive provisions of a consent decree of this Court entered in *United States v. Loew's Inc.*, 1950–1951 Trade Cas. (CCH) ¶ 62,861 (S.D.N.Y.1951). Twentieth Century–Fox Film Corporation ("Fox") has moved for disclosure of certain information in the possession of the government, and for a jury trial. Ms. Goldstein has also moved for discovery, and additionally has moved to dismiss for improper venue. For the reasons that follow, the motions are denied.

■ Initially, the parties are not in accord concerning the elements of criminal contempt. To establish criminal contempt, the government must prove beyond a reasonable doubt (i) that there was a clear and unambiguous order; (ii) that the defendant had actual knowledge of the order; and (iii) that the defendant willfully violated the order. *In re Economou*, 645 F.Supp. 1055, 1057 (S.D.N.Y.1986), *aff'd sub nom. SEC v. American Bd. of Trade*, 830 F.2d 431, 439 (2d Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1118, 99 L.Ed.2d 278 (1988). Moreover, in the context of a corporate defendant, a corporation can be held criminally liable for the conduct of its managerial employees acting within the scope of their authority, *United States v. Koppers Co.*, 652 F.2d 290, 298 (2d Cir.), *cert. denied*, 454 U.S. 1083, 102 S.Ct. 639, 70 L.Ed. 2d 617 (1981), even if such activities were against corporate policy or specific instructions. *See United States v. Basic Constr. Co.*, 711 F.2d 570, 573 (4th Cir.), *cert. denied*, 464 U.S. 956, 104 S.Ct. 371, 78 L.Ed. 2d 330 (1983). Thus, proof beyond a reasonable doubt that a managerial employee of Fox willfully violated the consent decree while acting within the scope of his or her authority establishes all the necessary elements of criminal contempt against Fox.[1]

---

1. Fox's argument that a corporation's failure to exercise reasonable diligence is an element of criminal contempt is not supported by the case law. The so-called "reasonable diligence" defense is a product of the law on civil contempt. The purpose of civil contempt is to coerce compliance with a court order; accordingly, if a defendant has made good faith efforts to comply with the order, the civil contempt power should not be exercised. *Powell v. Ward*, 643 F.2d 924, 931 (2d Cir.), *cert. denied*, 454 U.S. 832, 102 S.Ct. 131, 70 L.Ed.2d 111 (1981). However, exercise of the criminal contempt power requires a finding of willfulness, a consideration not necessary to civil contempts. No case has held that a corporation's reasonable diligence *excuses* the willful violation of a court decree by one of its employees; indeed, in each of the two cases relied on by Fox, the court looked to evidence of compliance efforts, or lack thereof, precisely because there was no evidence in the first instance that the employees who violated the decree did so willfully. *See United States v. Greyhound Corp.*, 363 F.Supp. 525, 554–60 (N.D.Ill.1973), *aff'd*, 508 F.2d 529, 538 (7th Cir.1974); *United States v. Kroger Grocery & Baking Co.*, 163 F.2d 168, 175 (7th Cir. 1947).

In accord with these cases, absent a finding of willful noncompliance by a corporate employee, evidence of a compliance policy is admissible as relevant to the issue of intent. Where there is a

## I. Discovery Motions

■ Fox seeks to obtain transcripts of the grand jury testimony of its employees pursuant to Fed.R.Crim.P. 16. Rule 16 provides in relevant part that where a defendant in a criminal action is a corporation,

> the court may grant the defendant, upon its motion, discovery of relevant recorded testimony of any witness before a grand jury who (1) was, at the time of that testimony, so situated as an officer or employee as to have been able to legally bind the defendant in respect to conduct constituting the offense, or (2) was, at the time of the offense, personally involved in the alleged conduct constituting the offense and so situated as an officer or employee as to have been able to legally bind the defendant in respect to that alleged conduct in which the witness was involved.

Fed.R.Crim.P. 16(a)(1)(A). Although the Court has discretion under this rule in determining whether to permit disclosure of the grand jury testimony of corporate employees, *see United States v. White Ready–Mix Concrete Co.*, 449 F.Supp. 808, 810 (N.D. Ohio 1978), the defendant must meet the threshold criteria of Rule 16.

At Fox's arraignment, the Court ruled that to obtain the transcripts, Fox must stipulate that the employees were able to legally bind the corporation.[2] *See* Fed.R. Crim.P. 16(a)(1)(A). Fox has declined to comply with this ruling. However, Fox is not entitled to the transcripts under Rule 16 unless at the time of the testimony or the conduct constituting the offense charged, the employees were so situated as to have been legally able to bind the corpo-

ration. Moreover, "[s]ince Rule 16(a)(1)(A) is discretionary with the court, corporate defendants may be required to stipulate to the precise language of the Rule before the government will provide relevant transcripts or statements. Several district courts have required such stipulations or written acknowledgements." ABA Handbook on Antitrust Grand Jury Investigations at 74 (2d ed. 1988) (footnote omitted); *see White Ready–Mix Concrete, supra*, 449 F.Supp. at 810–811; *United States v. United Oil Dealer Associations*, 1969 Trade Cas. (CCH) ¶ 72,575, at 85,992 (C.D. Cal.1968). It follows, therefore, that Fox is not entitled to the transcripts unless it provides the government with the written statement required by paragraph 2(a) of the pretrial stipulation and order attached as appendix 2 to the Fox memorandum.

■ Both defendants also seek the following information pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963):

> 1. The names of all persons contacted in the territory served by the Indianapolis/Milwaukee/Minneapolis branch who, when contacted, stated in words or substance that he or she had no complaints about Fox block-booking or conditioning film.
>
> 2. Any statements, documents or data that were obtained, produced, or generated during this investigation that tend to show the absence of a pattern of condition or typing within the Indianapolis/Milwaukee/Minneapolis branch.[3]

Fox contends that this information "is highly probative of Fox's diligence in at-

---

finding of a corporate employee's willful violation of a court decree, however, evidence of a corporation's compliance policy does not "tend to negate willfulness," *cf. Greyhound Corp., supra*, 508 F.2d at 532, and is irrelvant to the issue of intent. *See Basic Constr. Co., supra*, 711 F.2d at 573. Additionally, compliance efforts may be relevant to the amount of a fine if any to be imposed. *See United States v. United Mine Workers*, 330 U.S. 258, 303, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947).

**2.** Specifically, the Court stated: "I would condition the disclosure of the testimony of the employees upon the concession by the defendant

that they can bind the corporation. I think it would be unfair to do otherwise." Transcript at 19 (October 20, 1988).

**3.** The defendants originally made three *Brady* requests, but in light of the governments representation that "our investigation failed to find evidence that would have supported a broader indictment [covering activities outside the Indianapolis/Milwaukee/Minneapolis area]," Fox withdrew one request. *See* Reply Memorandum in Support of Twentieth Century–Fox's Motion for Discovery at 6.

tempting to achieve compliance." As we have already pointed out, however, Fox's efforts at compliance are not relevant to the issue of intent. Thus, this information does not exculpate Fox.

■ It is, moreover, information readily obtainable, even if assumed to be exculpatory. The government has a duty to disclose only "information which had been known to the prosecution but unknown to the defense." *United States v. Agurs*, 427 U.S. 97, 103, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976). A necessary corollary of this rule is that a defendant cannot complain of the nondisclosure of exculpatory evidence "if the defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory evidence." *United States v. Grossman*, 843 F.2d 78, 85 (2d Cir.1988) (quoting *United States v. Gaggi*, 811 F.2d 47, 59 (2d Cir.), cert. denied, — U.S. ——, 107 S.Ct. 3214, 96 L.Ed.2d 701 (1987)).

In any event, the information sought by the defendants would be of marginal relevance in view of the government's explicit concession in its brief that it makes no contention that Fox's block-booking activity was company wide or extended beyond the territory covered by the indictment.

## II. Venue Motion

■ The individual defendant, Ms. Goldstein, the Indianapolis/Milwaukee/Minneapolis branch manager for defendant corporation, asserts that venue is improperly laid in this district, and thus, as to her, the indictment should be dismissed. This issue was squarely decided in *Myers v. United States*, 264 U.S. 95, 44 S.Ct. 272, 68 L.Ed. 577 (1924), where the Court rejected the argument that a court's contempt power is limited to acts occurring within the territorial limits of that court. *See* Cyclopedia of Federal Procedure § 87.18 (3d ed. rev. vol. 1988). Ms. Goldstein's assertion that the Court's decision in *Bloom v. Illinois*, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968) overruled *Myers* is not well taken. A careful reading of *Bloom* and its progeny show that the Court has avoided characterizing contempt proceedings as criminal

proceedings entitled to all the protections of the Sixth Amendment. As the Supreme Court has stated, "[t]he ability to punish disobedience to judicial orders is regarded as essential to ensuring that the Judiciary has a means to vindicate its own authority." *Young v. United States ex rel. Vuitton Et Fils S.A.*, 481 U.S. 787, 796, 107 S.Ct. 2124, 2131, 95 L.Ed.2d 740 (1987). In *Young*, the Court upheld the district court's authority to appoint a private attorney to prosecute contempt actions. In referring to *Bloom*, the Court stated that that case does not require "that any prosecution of contempt must now be considered an execution of the criminal law...." *Id.* at 800, 107 S.Ct. at 2133–34. Thus, *Myers* remains vital and compels denial of Ms. Goldstein's motion to dismiss.

There is yet another reason for denying this motion. The consent decree itself provides that this court retains jurisdiction "for the enforcement of compliance therewith and for the punishment of violations thereof." *United States v. Loew's Inc.*, 1950–51 Trade Cas. (CCH) ¶ 62,861, at 64,551, Part XI (S.D.N.Y.1951). Pursuant to this provision, this court has supervised compliance with this and other related decrees for some 40 years.

Venue in this district is established by the consent decree. Venue has never been challenged despite numerous proceedings before this court involving multi-state activities of defendants bound by these decrees. In fact, the corporate defendant itself pleaded *nolo contendre* in this Court in 1978 to an indictment charging it with criminal contempt for block-booking in the Minneapolis area and paid a substantial fine. It raised no issue as to the propriety of venue. The consent decree before the Court as well as the related Paramount decrees, all involved multi-state business activities by large moving picture distributors. These decrees were entered by this Court after protracted litigation and were designed to establish court supervision of a nationwide industry. Compliance with these decrees would have been effectively frustrated by facile changes of venue, to

say nothing of the waste of judicial resources that would have ensued.

■ Ms. Goldstein alternatively seeks to have this case transferred pursuant to Fed. R.Crim.P. 21(b). The decision to transfer pursuant to Rule 21(b) is within the discretion of the Court. *See United States v. Keuylian,* 602 F.2d 1033 (2d Cir.1979). The only facts set forth in favor of transfer are that Ms. Goldstein resides and works in Illinois, and "[n]early all the facilities for Ms. Goldstein's defense are located in Illinois or Minnesota." These facts are insufficient to support the contention that the interests of justice require that this case be transferred to either Illinois or Minnesota. *See United States v. Williams,* 437 F.Supp. 1047, 1050–51 (W.D.N.Y.1977). In view of the scope and purposes of this decree as explained above, we decline to exercise our discretion to transfer this case to another district.

III. Jury Trial

■ We adhere to the ruling made at the arraignment that the corporate defendant is not entitled to a jury trial.[4] In a criminal contempt case where a fine is the only penalty, the financial power of a corporate defendant has been considered a relevant factor in determining whether the contempt is "serious," thus entitling a corporate defendant to a jury trial. *See Muniz v. Hoffman,* 422 U.S. 454, 477, 95 S.Ct. 2178, 2191, 45 L.Ed.2d 319 (1975) (fine of $10,000, though not insubstantial, not "a deprivation of such magnitude" to a large labor union "that a jury should have been interposed to guard against bias or mistake"); *United States v. Troxler Hosiery Co.,* 681 F.2d 934, 936 n. 2, 938 (4th Cir. 1982) ("*Muniz* requires that the right to a jury trial be gauged, somehow, according to the ratio of the fine imposed and the defendant's ability to pay"; fine of $80,000 imposed on defendant, whose request for a jury trial was denied); *Musidor, B.V. v. Great American Screen,* 658 F.2d 60, 66 (2d Cir.1981) (although defendant did not

waive its right to a jury trial, there was no deprivation of this constitutional right where fine was $10,000, constituting approximately 15% of the gross revenues from illicit sales), *cert. denied,* 455 U.S. 944, 102 S.Ct. 1440, 71 L.Ed.2d 656 (1982). Although the question was expressly left open in *Muniz,* 422 U.S. at 477, 95 S.Ct. at 2191, we believe, as the government argued in that case, that there is no constitutional right to a jury trial in any criminal contempt case where only a fine is imposed on a corporation.

At the arraignment, Fox was requested to submit a net worth statement and an annual statement of its last year of operations. Fox has since submitted information from its last Form 10–K filed with the Securities and Exchange Commission. The government has represented that the maximum fine it will seek is $500,000, which is less than 1% of Fox's net earnings for the year ending June 25, 1988. We adhere to our ruling that Fox is not entitled to a jury trial.

Defendants' motions are denied.

SO ORDERED.

---

**4.** Prosecution of the individual defendant is being treated as that of a petty offense, and there is therefore no issue with respect to a jury trial of that defendant. *See Bloom v. Illinois,* 391 U.S. 194, 210, 88 S.Ct. 1477, 1486–87, 20 L.Ed.2d 522 (1968).