**ATLANTIC RESEARCH MARKETING SYSTEMS, INC., a/k/a A.R.M.S., and Richard E. Swan, Plaintiffs**

v.

**G.G. & G., L.L.C., a/k/a Guns, Gear & Gadgets, L.L.C. or G', L.L.C., Thomas Patterson, and Thomas Newhall, Defendants**

No. 00–10672–REK.

United States District Court, D. Massachusetts.

Oct. 19, 2001.

Douglass A. Hale, Wynn & Wynn, Raynham, John P. McGonagle, Law Offices of John P. McGonagle, Rockland, MA, for Atlantic Research Marketing Systems, Inc. aka A.R.M.S., Richard E. Swan, Plaintiffs.

Howard R. Wine, Law Office of Howard R. Wine, Tucson, AZ, Lucy D. Lovrien, Boston, MA, for G.G. & G., L.L.C. aka Guns, Gear & Gadgets, L.L.C. aka G', L.L.C., Thomas Patterson, Thomas Newhall, Defendants.

Opinion

KEETON, District Judge.

## I. Introduction and Background Circumstances

Pending for decision, as part of a recently filed submission, is Defendant's Motion to Dismiss Counts Four Through Six of the Amended Complaint Pursuant to Rule 12(b)(6), Fed.R.Civ.P. (Docket No. 25, filed April 19, 2001).

The motion is opposed in Plaintiff's Opposition to Defendants' Motion to Dismiss Counts Four Through Six of the Amended Complaint (Docket No. 27, filed April 25, 2001).

Also pending is Plaintiffs' Motion to Assert Subject Matter Jurisdiction (Docket No. 31, filed May 25, 2001), which is opposed in Defendants' Reply to Plaintiffs' Attempted Showing of the Minimum Jurisdictional Amount in Controversy (Docket No. 32, filed June 14, 2001).

For the reasons explained in this opinion, I conclude that Civil Action No. 00–10672–REK cannot be maintained in this court or in any other court, state or federal, as an independent civil action for breach of the settlement agreement between the parties unless the final judgment in Civil Action No. 96–11425WGY, in accordance with the settlement agreement, is first set aside. No adequate ground for

setting aside that final judgment has been shown.

I consider also in this opinion (1) whether any basis has been shown for finding that further hearings would produce any showing of law and fact that would support an order setting aside that final judgment, and (2) whether Civil Action No. 00–10672–REK can be maintained in this court as a proceeding in aid of enforcement of the final judgment in Civil Action No. 96–11425WGY.

As background, some parts of this court's Memorandum and Order of March 9, 2001 (Docket No. 22) are essential to understanding the contentions now before me. Indeed, the submissions now before me are responses to my invitation in the Memorandum and Order of March 9 for clarification of the parties' contentions and for statement of positions on issues identified in my Memorandum and Order.

This statement of relevant background circumstances begins with a quotation of the most relevant passages in Parts II–X of the Memorandum and Order of March 9, 2001, in this civil action:

## II. The History of Civil Action No. 96–11425WGY

In Civil Action No. 96–11425WGY, after proceedings before Judge (now Chief Judge) Young of this court from the date of filing on July 12, 1996 until December 1997, Judge Young ordered Judgment on a settlement agreement. Paragraph 6 of that Judgment of December 17, 1997, being the final paragraph, was as follows:

> Jurisdiction in this Court is retained to enter such further Orders as may be necessary for the carrying out of this Judgment, the enforcements of compliance with its terms, or the punishment of violations of said terms.

Any such further orders, enforcement or punishment shall be in addition to any and all other remedies available to the parties arising under this Judgment, Settlement Agreement and Addenda.

In addition to recitations regarding jurisdiction and venue in paragraphs 1 and 2, the other paragraphs of the Judgment were as follows:

3. Judgment for Plaintiffs for damages in the amount of $500,000.00 on all counts in favor of Plaintiffs against Defendant, G.G. & G., L.L.C., and Judgment for Plaintiffs for damages in the amount of $75,000.00 against Defendants, Thomas Newhall and Thomas Patterson, jointly and severally, with all of the Defendants' counterclaims dismissed with prejudice. Levy and execution on the damages judgment are subject to the terms of a Settlement Agreement, dated October 24, 1997, and any Addenda thereto.

4. Permanent Injunctive Relief as delineated below is hereby entered:

a. Mark Newhall, voluntarily submits to the jurisdiction of the U.S. District Court of Massachusetts only for purposes of the following injunction portion of this Judgment, including the provisions for determination of proprietary "know-how" and related injunctive relief.

b. Defendants G.G. & G., L.L.C., Thomas Patterson and Thomas Newhall, and Mark Newhall, their agents, servants, employees, attorneys, successors, assigns and consignees, and all those acting under their authority or in privity with them are permanently enjoined from any and all of the following:

i. making, using, selling, dealing or offering for sale any product which infringes United States Letters Patent Nos. 5,142,806; 5,276,988; and 4,845,871;

.     .     .     .     .

c. Should any of the Defendants, or Mark Newhall, intentionally and substantially violate any of the provisions of the above injunction, including violations of any restrictions or prohibitions on the proprietary "know-how" belonging to Plaintiffs, said Defendants and Mark Newhall shall be subject to liquidated damages in the amount of the greater of $75,000 or actual damages proven.

5. Defendants are entitled to retain examples of any item identified in the pleadings for legal defense and related purposes provided that an inventory of such items is provided to Plaintiffs and that such items are maintained in the custody and control of Defendants' present counsel of record in this case, and for personal and private use as permitted by the Settlement Agreement and Addenda.

Judgment of December 17, 1997 (Docket No. 93 in Civil Action No. 96–11425WGY).

III. Plaintiffs' Unsuccessful Early Procedural Maneuvers in Civil Action No. 00–10672–REK

A. The Motion to Consolidate

Plaintiffs filed their complaint in the new Civil Action in April 2000. As was appropriate under this court's regular practice and procedure, the new case was drawn and assigned randomly. In that way, the case came to the judge on whose docket it now remains (Judge Keeton), and was designated as Civil Action No. 00–10672–REK.

In September 2001, plaintiffs' attorneys presented to the Clerk a Motion to Consolidate (Docket No. 10, filed Sep-

tember 6, 2000) this new case with Civil Action No. 96–11425WGY, even though that case had been closed under the Judgment ordered by Judge Young in December 1997 (Docket entry of December 17, 1997, in Civil Action No. 96–11425WGY).

Judge Keeton orally denied the motion to consolidate at the Case Management Conference of September 7, 2000, stating two reasons for the ruling. The suggestion emerged in the colloquy among counsel and Judge Keeton that the two cases should be treated as related cases, under D. Mass. L.R., 40.1(e), and should be before one judge, regardless of whether that judge was Judge Young or Judge Keeton. Judge Keeton rejected this suggestion for the reason that Rule 40.1(e) explicitly states, "This rule shall not apply if more than two years have elapsed since the closing of the previous action." The colloquy then continued:

> THE COURT: All right, now, that's point one. Point two, I think that consolidating a new case with a closed case that has been closed for a long time is simply out of the question. Why should it be consolidated?
>
> Now, if it's consolidated, then it ought to go back to the judge who had the earlier case, and I certainly can't order it consolidated and tell Judge Young, "You must take this new case because I've ordered it consolidated." He would have to do the order of consolidation.
>
> Now, that tells me that for the reasons I've just said to you, that I think I should simply deny your ["]motion to consolidate, or in the alternative, to transfer as a related case["] and go forward with deciding what's to be done with this case.

What is it that the plaintiff is seeking here?

MR. McGONAGLE: Your Honor, we've brought an action based on a breach of contract, actually breach of the settlement agreement, and violation of the permanent restraining order, permanent injunction that was put into that judgment.

To do the short version, the original case had to do with selling of products of my client by a manufacturer, which is the defendant, unauthorized selling. There was intellectual property issues and things like that.

The case was about to go to trial. It was settled. A judgment was entered reflecting the settlement terms. And among the different terms in there, there was a particular product that the defendants agreed and a judgment was entered into that they not sell again, make or sell these products again. The particular product is called an M14. This has to do with military-style rifles. This is an interface device developed by my client known worldwide, and it allows you to interface scopes, various kinds of laser equipment and things like this to an M14 rifle, a military rifle.

One of our experts determined at a show that the defendants were still selling this product—this was long after the judgment went into effect—in violation of a restraining order. We have very strong evidence plus an admission by one of the defendants that this in fact has happened. We allege that there's a breach of the settlement agreement and a violation of the permanent injunction that was a part of that judgment.

There is a damages clause in the settlement agreement, liquidated

damages of $75,000 or actual provable damages, whichever is the greater.

That is the summary of the plaintiff's position, your Honor.

THE COURT: Give me one more bit of information. Formally, how was it done? Was the settlement agreement incorporated into a judgment?

MR. McGONAGLE: The judgment, your Honor, took the basic terms of the settlement agreement and made it as part of the judgment. That has been attached to the -

THE COURT: Is that document before me?

MR. McGONAGLE: That's attached to the complaint, your Honor.

THE COURT: All right, where is it?

MR. McGONAGLE: Excuse me. That is Exhibit 1, the judgment attached to the complaint. The settlement agreement is attached as Exhibit 2. The specific clause in the judgment is on Page 3 of the judgment, (iii), the second line. It's referred to as the "M14 mount." It's actually B(iii). The liquidated damages clause is on Page 5 of the judgment, Paragraph 4–C.

THE COURT: There was a request here for filing under seal?

MR. McGONAGLE: That was the settlement. The settlement agreement had some payment terms in it which the parties preferred not to have public, so the settlement agreement was filed under seal. The judgment was public. The basic terms—

THE COURT: All right, so nothing that's before me is under seal?

MR. McGONAGLE: No, your Honor.

THE COURT: All right. Now, I have some unease about some of the terms of this judgment. Let me put the point to you in a very extreme way that is not done by this judgment, but I have had parties come before me with a settlement agreement asking me to put in a judgment that I would become a small claims court to settle their controversies at no matter what amount, if it's only $50 involved, and I have absolutely refused to do so because I think it is not appropriate for this court to disregard its monetary limitation on its jurisdiction. Where there is a monetary limitation, it has to be a claim of a certain amount in order to satisfy the jurisdiction of this court.

Now, I have some unease that some of the claims that you may be asking me to adjudicate under the terms of this judgment would not independently of the judgment be within the jurisdiction of this court. If you filed it as a separate claim at this point, this court would not have jurisdiction. And so I'm not promising you that I will come to the conclusion that I can do everything this judgment purportedly promised you that this court will do, and that's an issue I want briefed if we come to that. And if you want me to resolve your disputes, you've got to show me that I have jurisdiction.

Let me put the point another way. I am constantly presented with contentions that some governmental official, local, state, or federal, has exceeded authority, and I have to take those seriously. I think I should take even more seriously an effort to get me to exceed my authority. My authority is limited to deciding cases and controversies that are assigned to the jurisdiction of the United States Dis-

trict Court; and if you are asking me to resolve some disputes that are not within that jurisdiction, I think probably what I should do is hold that if that's the way you want me to interpret this judgment, I won't do it. I will interpret this judgment instead as implicitly limited to deciding disputes over which this court has jurisdiction.

MR. McGONAGLE: Your Honor, as part of this judgment, we have a permanent injunction. This is an order of the Court.

THE COURT: Yes, permanent injunction that you won't do something that might cause $50 damages to the other side. That doesn't give me jurisdiction perpetually to have you bringing $50 disputes in here. That's what I'm saying to you.

Now, you know, if you think otherwise, I think we've got a problem that I'm going to require that we face up to, and I'll make a decision one way or the other after I've given you a chance to brief it.

MS. LOVRIEN: If I may just point out something that I'm sure your Honor noticed.

THE COURT: Yes.

MS. LOVRIEN: In the complaint, the plaintiff actually alleged over $50,000 of damage. We in our answer pointed out that that's under the jurisdictional limits for diversity.

THE COURT: In this complaint?

MS. LOVRIEN: In this complaint.

MR. McGONAGLE: Your Honor, the $50,000 was a typo. We attached the judgment and the settlement agreement which clearly states that the minimum damages in this case is $75,000. If we're talking $5,000, we wouldn't be here.

THE COURT: Wait a minute. The settlement agreement says that?

MR. McGONAGLE: Yes, your Honor, and the judgment, the judgment.

THE COURT: She is talking about the jurisdictional amount for this case. You are talking about the jurisdictional amount for that old case. You have to face up to the fact that you have to show me a jurisdictional amount for this case. Do you see my point?

MR. McGONAGLE: I think we do, your Honor. The settlement agreement is a contract action. We have a violation of the contract. We're alleging a violation of the contract. When this contract was put together, both parties realized the difficulty in determining what the actual damages were, but they both agreed that the damages would be substantial, and they said, "Put a floor of $75,000." Both parties agreed that the floor would be $75,000.

THE COURT: You must show that the breach that you are claiming in this action before me now results in a claim, a viable claim, not just one that you assert, a viable claim within the jurisdictional amount of this court for this claim, this case.

Now, I take it I'm probably going to have a motion to dismiss for want of jurisdiction somewhere down the line, and we'll have to take it seriously.

All right, now, let's talk about a schedule for trying to get this rather as yet disorganized matter organized so that I can understand what the issues are that I need to face up to first, and I must face jurisdictional issues whether you want to face them or not.

There's also the proposition that the Court must notice its own lack of jur-

isdiction even if neither party calls it to my attention, and here the defendant is telling me that there is a lack of jurisdiction because of the jurisdictional amount problem.

So I think we may need to take a somewhat different view of how we go about scheduling this case, but I have no problem, ... [with discovery going forward if the parties can agree on it]. The moment it starts to involve disputes about discovery, I'm going to demand to know why I should be considering those disputes, because if the case before me is not one over which I have jurisdiction, I ought not to be considering discovery disputes. That would be a terrible waste of resources.

Now, do you want to proceed with the schedule that you proposed to me until you run into some problem, at which time you'll have to come before me? Anytime that you come before me for a hearing, my first question is going to be, "Show me that I have jurisdiction over this case."

What do you want to do?

MS. LOVRIEN: Did you want me to explain my position on discovery, your Honor?

THE COURT: Go ahead.

MS. LOVRIEN: As you can see, the plaintiff has provided a much shorter discovery period, especially for depositions, and I'm very concerned, particularly as we're hitting December and January. A number of the parties are in Arizona....

THE COURT: The thing that is troubling me is, even if I adopt your schedule, which seems a more realistic alternative than adopting the plaintiff's schedule in light of the problems that we face here, even if I adopt your schedule, I cannot imagine that you will be able to go through those depo-

sitions without having discovery disputes to bring to me for resolution.

MS. LOVRIEN: That is certainly a possibility.

THE COURT: Now, here's what I propose to you: I'll accept the defendant's proposed schedule subject to this limitation, that the moment you bring any discovery dispute to this Court—and that includes not just me, but I'm not going to assign any magistrate judge to it, I'll hold onto it myself—the moment you bring me a discovery dispute, my first question is going to be, "Show me that the discovery over which you are disputing is material to some issue over which I have jurisdiction, including concerns about jurisdictional amount."

.    .    .    .    .

MS. LOVRIEN: Okay. The second part of the motion relates to transferring the case to Judge Young under the Related Case Rule, but—

THE COURT: Here's what I'm going to do with that one. I am going to deny that motion. It's without prejudice to your filing an appropriately supported motion. I, frankly, can't imagine what kind of appropriate support you could have for either a transfer to Judge Young by my order or for a consolidation by my order, but certainly this present filing doesn't show me the basis for doing so. So I'm going to mark on the margin of this—

Do I have the original here?

MS. LOVRIEN: It's downstairs in the Clerk's office. It was filed late yesterday.

THE COURT: All right, then I'll simply state my order here orally: This motion is denied after hearing this date. This denial is without prej-

udice to the later filing of a properly supported motion, either to consolidate or to transfer as a related case. And the record before me now shows no basis for doing either of those, but my order does not foreclose you from filing something different that does show a basis for one or the other of those orders.

MS. LOVRIEN: May I just ask for clarification on one point, your Honor?

THE COURT: Yes.

MS. LOVRIEN: I assume that the major basis for your denial is the deadline, the two-year provision in local Rule 40.1? Is that right?

THE COURT: Well, that is the major basis for my denial of that part of it that asks me to transfer it as a related case. That is not the basis for my denial of the consolidation. My basis for the denial of the consolidation is: The other case is closed long ago, and we don't consolidate a new case with a case that's closed.

MS. LOVRIEN: Thank you, your Honor.

THE COURT: I mean, that's not even stated in the rules. That one I suppose might be thought of as being so clear that you didn't need to have a rule saying it. And if you think otherwise, then of course you've got to show me the basis for thinking otherwise. All right?

MS. LOVRIEN: Yes. Thank you.

Transcript of proceedings on September 7, 2000 (Docket No. 13 in Civil Action No. 00–10672–REK) at 7–18.

B. The Motion to Reconsider

Plaintiffs moved to reconsider (Docket No. 14, filed October 4, 2000) the court's denial of consolidation, and Judge Keeton denied that motion by Memorandum and Order of October 20, 2000, for reasons stated as follows:

The papers presented contain no argument or precedent beyond those considered by the court at the conference held on the record on September 7, 2000. They do not identify any reasoned basis for consolidating this case, filed in the year 2000, with a closed case that has not been reopened after final judgment was ordered by the District Judge before whom it was pending and entered by the clerk.

For this reason and the added reasons stated at the conference of September 7, 2000, Transcript (Docket No. 13), pages 7–18, the renewed motion to consolidate is DENIED in the Order below.

Memorandum and Order of October 20, 2000 (Docket No. 16).

IV. The "Putative" Liquidated Damages "Clause"

Defendants assert that a "putative liquidated damages clause's provision for recovery of exactly $75,000 does not satisfy the jurisdictional minimum," now $75,000. Docket No. 18 at 1, ¶ 1a (citing *Anthony v. Security Pacific Financial Services, Inc.*, 75 F.3d 311, 315 n. 1 (7th Cir.1996)) (amount in controversy must exceed, not just equal, statutorily specified sum). Defendants then proceed in the next paragraph to assert that the "putative liquidated damages clause is an unenforceable penalty as a matter of law, and so cannot supply a factual basis for an amount in controversy allegation." *Id.* at 1, ¶ 1b (citing *PacifiCorp Capital, Inc. v. Tano, Inc.* 877 F.Supp. 180, 183–84 (S.D.N.Y.1995)).

The agreement that the defendants characterize as an unenforceable liquidated damages clause is in fact a set of provisions that appear in paragraph 3 of

the Judgment of December 17, 1997, and provisions in the Settlement Agreement regarding levy and "execution on the judgment," to which paragraph 3 of the Judgment refers. The relevant provisions of the Settlement Agreement to which the Judgment refers are as follows:

A. JUDGMENT FOR MONETARY DAMAGES AND SATISFACTION THEREOF

1. ... Levy and execution on the damages judgment are subject to the terms of the settlement agreement.

2. The Plaintiffs irrevocably waive all but payment of $75,000.00 of said judgment. The parties agree that the above judgment for damages will be satisfied in full by the payments set forth in this section, which Defendants G.G. & G., L.L.C., Thomas Newhall and Thomas Patterson agree to pay. Notwithstanding the entry of the judgment for damages, no execution or levy to enforce or collect the above judgment for damages shall issue other than for the amounts and according to the terms set forth in this section.

Docket No. 17, Exhibit 2 (Settlement Agreement) at 1–2.

I conclude that these provisions in the Settlement Agreement and the Judgment based on it were approved by Judge Young. I must treat them as valid and enforceable. Any contention by either plaintiffs or defendants to the contrary is hereby rejected.

V. Motion to Amend Complaint in Civil Action No. 00–10672–REK

A. In General

Plaintiffs' proposed Amended Complaint, in paragraph 6, alleges that the "matter" in controversy "exceeds the sum of $75,000.00, exclusive of interests and costs." If by using the word "matter" rather than "amount" plaintiffs hope to persuade this court that they somehow escape the jurisdictional amount limitation on this court's subject-matter jurisdiction, they have failed. It is this court's obligation to take notice of its lack of subject-matter jurisdiction, even if no party raises the issue and all parties wish the court to accept jurisdiction.

Plaintiffs allege in their motion to amend that they "inadvertently listed as $50,000 rather than $75,000" the jurisdictional amount for subject-matter jurisdiction under 28 U.S.C. § 1332 (diversity of citizenship) (Docket No. 17 at 1). They add that the proposed amendment "brings the complaint into compliance with the facts of the case." *Id.*

Defendants' Motion to Dismiss (Docket No. 18) (considered on its merits in Parts VI–IX below) was filed two weeks after the filing of the motion to amend the complaint. In practical effect, it is a response in opposition to the motion to amend, even though formally labeled as a motion to dismiss for lack of subject-matter jurisdiction.

. . . . .

IX. The Possibility of Abstention

Abstention doctrine has its roots in *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

In 1943, the Supreme Court recognized a ground of abstention that has come to be identified with the name of the claimant in that case. *See Burford v. Sun Oil Co.,* 319 U.S. 315, 334, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).

In 1996, the Supreme Court held that dismissal of a common-law action for damages is not allowed under *Burford* abstention and that the appropriate order is a stay. *See Quackenbush v. All-*

*state Ins. Co.,* 517 U.S. 706, 730–31, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996).

Very recently, the Court of Appeals for the First Circuit has approved a stay, under *Burford* abstention, of tort claims based on a former wife's management of the former husband's care, insurance, and property during a period when the former husband was incapacitated. *See Dunn v. Cometa,* 238 F.3d 38 (1st Cir.2001).

Of course, abstention, where it is permissible at all, is often a matter within the district court's discretion, at least where (as here) the judgment whether to abstain depends on an interplay of factors. *DeMauro,* 115 F.3d at 99–100 (contrasting the more "automatic" abstention categories derived from *Younger v. Harris,* 401 U.S. 37, 45, 54, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)). But there is no point here in remanding to the district court for an exercise of that discretion as to counts I and II; the courts stated reasons for dismissing them virtually assure that a remand would simply result in substituting abstention as the proper label for deferring to state courts. As for counts III–V, abstention has already been approved by the district court.

This brings us to remedy. In *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996), the Supreme Court held that dismissal of a common law damage action is not allowed under Burford abstention; where the relief sought is money damages (rather than injunctive or other discretionary relief), *Quackenbush* permits the district court only to stay the federal action pending state proceedings. 517 U.S. at 730–31, 116 S.Ct. 1712. This mandate may seem a surprising result— sometimes the state action would pre-

dictably afford full relief or, alternatively, negate the basis for relief in any court—but *Quackenbush*'s directive is unqualified.

Presumably the district court ordered dismissal as to counts III–V because neither side called its attention to *Quackenbush.* In this court Dunn's opening brief ignores *Quackenbush,* and it is Cometa who cites the case and suggests a remand to be followed by a stay. Conceivably, Dunn has no interest in such limited relief on appeal; a protective state court action was filed by Dunn's father for both him and his son after the district court dismissal, and it may be that there is no statute of limitations problem and that they foresee no further role for the federal action if they are forced to litigate first in the state court.

In all events, we think that the soundest course in this case is to vacate the dismissal of all counts and remand for a stay in accordance with *Quackenbush* pending resolution of the filed state court action, unless both sides agree to dismissal without prejudice or some other course acceptable to the district court. Neither side has addressed the implications of such a stay for counts VI and VII, and we leave that issue for the parties to address in the district court.

The judgment of the district court is vacated and the matter remanded for the entry of a new judgment and stay consistent with this opinion. Each side shall bear its own costs on this appeal.

*Id.* at 43, 91 S.Ct. 746.

Other episodes in the history of abstention doctrine are represented by *Louisiana Power & Light Co. v. City of*

*Thibodaux*, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959); *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); and *Colorado River Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

This case does not fit neatly into any of the various categories of abstention established by precedent, but that fact alone is not conclusive against some form of abstention or stay. *See Grode v. Mutual Fire, Marine and Inland Ins. Co.*, 8 F.3d 953 (3d Cir.1993). *Grode* involved a potentially catastrophic insurer insolvency. The Insurance Commissioner of the Commonwealth of Pennsylvania brought suit in the Commonwealth Court of Pennsylvania against two Bermuda corporations, alleging that they failed to pay almost $5,000,000 to Mutual Fire, owed under numerous reinsurance contracts. The Bermuda corporations removed to the United States District Court for the Eastern District of Pennsylvania. That court chose to abstain from deciding issues placed before it by a motion to compel arbitration, and remanded to the Commonwealth Court. The Court of Appeals for the Third Circuit reversed.

Before this court, the Insurance Commissioner argues that we should affirm the district court's abstention on the basis of:

(1) the *Burford* abstention to avoid the danger of interfering in Pennsylvania's administrative and judicial scheme for the regulation of insolvent insurers;

(2) the *Colorado River* abstention because of an important concurrent state court jurisdiction;

(3) the *Younger* abstention because there is an ongoing judicial proceeding in which there is an adequate opportunity to raise constitutional challenges; and

(4) *Thibodaux* because the dispute raises questions of state law bearing on matters of special import.

The Insurance Commissioner's rationale appears to be two-fold: (1) federal adjudication threatens to conflict with important state functions and interests, and (2) the McCarran–Ferguson Act enacted by Congress defines the policy of non interference by the federal government in insurance matters controlled by the state.

In support of her position, the Commissioner cites our decision in *Lac D'Amiante du Quebec, Ltee v. American Home Assurance Co.*, 864 F.2d 1033, 1045 (3d Cir.1988), and *Foster v. The Mutual Fire, Marine and Inland Insurance Co.*, 986 F.2d 48 (3d Cir. 1993). In *American Home*, we held that *Burford* abstention applies to cases involving the state regulation of insolvent insurance companies, such as Mutual Fire in this case.

.        .        .        .        .

In sum, the dispute underlying this appeal is an ordinary contract action in which the plaintiff happens to be an insolvent insurance company. The state regulatory scheme will not be disrupted by a federal court's disposal of such a claim.

Moreover, the state's interest in regulating insurance companies does not stretch to this situation, because there is not a large number of similarly situated plaintiffs racing to the courthouse. Rather, the Commissioner is merely suing a party for an allegedly unpaid debt. To allow abstention here would be permitting abstention in any tort or contract action involving a regulated industry, no matter how attenuated the connection

between the cause of action and the state regulations. Such a result is anomalous, especially in a case, such as the one *sub judice*, that involves a federal issue.

Accordingly, the judgment of the district court will be reversed and the case remanded for further proceedings consistent with this opinion.

8 F.3d at 958, 957–61 (footnote omitted).

X. Explanation of the Order Made in This Case at this Time [March 9, 2001]

In Part IV, above, of this opinion, I have concluded that the provisions of the Settlement Agreement and the Judgment of December 17, 1997, based upon it are valid and enforceable by order of Judge Young....

Also, any injunctive relief that may be ordered is subject to the limitations explained in Parts IV–IX, above, of this opinion.

Any disputes over plaintiffs' alleged rights to further discovery must be resolved with sensitivity to the principle of proportionality expressed in the Federal Rules of Civil Procedure as they now stand, and Local Rules of this Court consistent with the Federal Rules of Civil Procedure as they now stand.

The order that I make below is a case-management order, and in my view it is not appropriate to characterize it as a form of abstention, even though it is a kind of stay. The purpose of the order is to assure fair process and hearing before final decision.

Docket No. 22, Parts II–X.

The Order of March 9, 2001, was as follows:

For the foregoing reasons, it is ORDERED:

(1) Plaintiffs' Motion to Amend Complaint (Docket No. 17) is ALLOWED.

(2) Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction (Docket No. 18) is DENIED but WITHOUT PREJUDICE to the later filing of a submission showing cause to dismiss or to abstain.

(3) The parties may file, on or before April 10, 2001, new submissions that they can file consistently with their obligations under Rule 11 of the Federal Rules of Civil Procedure, showing cause, if any exists, for vacating or modifying the court's ruling stated in Part IV of the opinion of March 9, 2001.

(4) A **Case Management Conference is scheduled for April 27, 2001, at 3:00 p.m.**

*Id.* at 24.

## II. Submissions Docketed After March 9, 2001 and Proceedings at the Hearing of May 18, 2001

The following submissions were filed after the issuance of the Memorandum and Order of March 9, 2001 and before the hearing, originally scheduled for April 27, and in fact held, after postponement, on May 18, 2001:

Defendants' Submission in Response to the Court's Memorandum and Order Dated March 9, 2001 AND Motion to Dismiss Counts Four Through Six of the Amended Complaint Pursuant to Rule 12(b)(6) (Docket No. 25, filed April 19, 2001), and Plaintiffs' Opposition to Defendants' Motion to Dismiss Counts Four Through Six of the Amended Complaint (Docket No. 27, filed April 25, 2001).

At the hearing of May 18, 2001, the court heard the arguments of the parties and took the matter under advisement.

Since then, the following submissions were filed:

Plaintiffs' Motion to Assert Subject Matter Jurisdiction (Docket No. 31, filed May 25, 2001), and Defendants' Reply (Docket No. 32, filed June 14, 2001).

### III. Current Positions of the Parties

Plaintiffs' current position in this case is stated in Plaintiffs' Opposition to Defendants' Motion to Dismiss Counts Four Through Six of the Amended Complaint (Docket No. 27). Plaintiffs' view of relevant "FACTS" is as follows:

1. In the later portion of 1995 a dispute arose between the parties regarding true and accurate accounting of certain licensed plaintiffs firearm mounts, as well as unauthorized manufacture and sale of various other plaintiffs products. This dispute led to commencement of *A.R.M.S. et al. v. G.G. & G., L.L.C., et al.*, Civil Action No. 96–11425WGY in Summer, 1996.

2. In October, 1997, the parties settled the action. The terms of settlement were set forth in a Settlement Agreement with an effective date of October 6, 1997.

3. On a Stipulation and Motion For Entry of Judgment by the parties, and as part of the Settlement Agreement, the court entered a Judgment for Plaintiffs on December 17, 1997, providing injunctive relief, specifying damages on all counts, and dismissing Defendants' counterclaims. Defendants did not appeal the Judgment. The case then became a "closed" case.

4. The Judgment addressed all claims for the parties. Specifically, Paragraph 3 of the Judgment found for Plaintiffs on all counts and dismissed with prejudice all of defendants' counterclaims.

5. The Judgment, as well as the Settlement Agreement, banned defendants, inter alia, from making, using, selling, dealing or offering for sale certain named products, including any M–14 mount.

6. In September, 1999, plaintiffs learned that defendants were actively selling and marketing M–14 mounts.

7. After further investigation, plaintiffs filed the current action on April 6, 2000 alleging breach of settlement agreement and contempt.

8. On June 1, 2000 defendants served their Answer.

9. On December 11, 2000 plaintiffs filed an *assented to* motion to amend the complaint.

10. On December 20, 2000 defendants filed a motion to dismiss for lack of subject matter jurisdiction.

11. Plaintiffs opposed defendants' motion and the Court denied defendants' motion on March 9, 2001.

12. Now defendants have filed a motion to dismiss counts four through six of the amended complaint for failure to state a claim for relief.

13. This document is plaintiff's opposition to said motion to dismiss counts four through six of the amended complaint.

*Id.* at 1–3.

Plaintiffs' "ARGUMENT" is as follows:

A complaint should not be dismissed unless it appears beyond doubt that plaintiffs can prove no set of facts that would entitle them to a claim for relief. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The basis of the complaint in the present case is that defendants have violated the permanent injunctive order of the court to refrain from making, using, selling, dealing or offering for sale a certain named product, namely any M–14 mount. Defendants' actions as alleged not only harm plaintiffs, but also violates the public

policy of requiring parties to comply with the orders of the court.

In their memorandum of points and authorities, defendants cite various cases in other jurisdictions for various principles of law. However, none of these cases address the proper procedure to be followed in this court for raising a contempt matter in a closed case. The proper procedure has been described in *King v. Greenblatt,* 489 F.Supp. 105 (D.Mass.1980).

The proper procedure to be followed in a closed case in which an order of the court has not been complied with is for the complaining party to file a petition or complaint seeking adjudication of civil or criminal contempt, or both. The clerk of the court should then give the matter a new civil or criminal action number, rather than accepting a motion for filing in a closed case. *Id.,* at 106. This is the procedure which plaintiffs have followed in the present case.

The Judgment and Settlement Agreement upon which the present case is based, arose from *A.R.M.S. et al. v. G.G. & G., L.L.C., et al.,* Civil Action No. 96–11425WGY, which was closed in December, 1997. The procedure followed by the plaintiffs was correct.

On principle, it is clear that once a case is closed, there must be a new proceeding if there is involved something more than an amendment of the judgment. In the present case plaintiffs are *not* seeking an amendment of the judgment. Therefore, there had to be a new proceeding. The plaintiffs correctly filed the present case and the clerk correctly has assigned it a new action number.

*Id.* at 3–5.

Defendants' position is stated in Defendants' Motion to Dismiss Counts Four Through Six of the Amended Complaint Pursuant to Rule 12(b)(6), Fed.R.Civ.P. (Docket No. 25). They begin with the assertion,

> *Plaintiffs' counts based on the Judgment in 96–11425 WGY—counts that seek relief through contempt sanctions—should be dismissed under Rule 12(b)(6), Fed.R.Civ.P.*

*Id.* at 2. They add:

> Plaintiffs have asserted two distinct sets of claims in this action. One set—Counts One through Three—should be dismissed pursuant to Rule 12(b)(6), Fed.R.Civ.P., for failure to state a claim.

> In Counts One through Three, Plaintiffs assert a set of state-law claims for breach of contract based on allegations that Defendants breached the Settlement Agreement. In Counts Four through Six, Plaintiffs assert a different set of claims based upon a non-existent federal cause of action—namely, alleged violations of an injunction issued in 96–11425WGY, a different, earlier case.

*Id.*

Defendants respond further as follows:

> The federal causes of action that Plaintiffs try to assert in Counts Four through Six do not exist. There is no such thing as an independent cause of action for contempt of court. A proceeding for civil contempt of a permanent injunction is a continuation of the case in which the injunction issued. *Leman v. Krentler–Arnold Hinge Last Co.,* 284 U.S. 448, 452–53, 52 S.Ct. 238, 240, 76 L.Ed. 389 (1932) (civil contempt proceeding "not to be regarded as an independent one, but as part of the original cause"); *NLRB v. Hopwood Retinning Co.,* 104 F.2d 302, 305 (2d Cir.1939) (civil contempt proceeding "properly a continuance of the earlier action in this court" and "correctly instituted by motion served upon the counsel appearing for

the parties in the record" in the earlier action). As explained in *E.E.O.C. v. Local 40, Int'l Ass'n Iron Workers*, 885 F.Supp. 488, 490 (S.D.N.Y.1994), the proper way to invite a court to hold a defendant in contempt for violating a permanent injunction is to move or petition for contempt **in the case in which the injunction was issued.** The U.S. District Judge in *E.E.O.C. v. Local 40* declined to hear a contempt petition alleging violations of an injunction in another case issued by a still-sitting fellow federal district judge, whose own chambers "posesse[s] ample powers itself to take care of its own dignity and punish the offender." *Id., quoting Ex parte Bradley*, 74 U.S. (7 Wall.) 364, 372, 19 L.Ed. 214 (1868). *See also Myers v. U.S.*, 264 U.S. 95, 44 S.Ct. 272, 273, 68 L.Ed. 577 (1924) (contempt proceedings "are sui generis—neither civil actions nor prosecutions for offenses, within the ordinary meanings of those terms—and exertions of the power inherent in all courts to enforce obedience").

As this Court itself obliquely suggests in its *Memorandum and Order (3/9/01)*, if Plaintiffs wish to obtain judicial relief for an alleged violation of Judge Young's Judgment in 96–11425 WGY, the only legally cognizable method is to move for civil contempt before Judge Young in 96–11425 and request that he re-open that case for the purpose of adjudicating the contempt motion. *Leman, supra; NLRB v. Hopwood Retinning, supra; E.E.O.C. v. Local 40, supra.* For Plaintiff to use the proceedings in a brand new federal action as a mechanism to ask a different U.S. District Judge to re-open that prior case and substitute himself for the still-sitting judge assigned to it is unjustifiably irregular.

Because there is no independent federal cause of action for contempt of an injunction issued by a different federal judge in an earlier case, Counts Four through Six of the Amended Complaint should be dismissed pursuant to Rule 12(b)(6), Fed.R.Civ.P., without prejudice to Plaintiffs' right to seek relief by cognizable means—*i.e.*, a motion to re-open and for contempt in 96–11425 WGY.

*Id.* at 3–4 (footnote omitted) (emphasis in original).

Defendants also argue that Counts One through Three for breach of contract are not within this court's subject matter jurisdiction.

> IV. *The remaining claims—Counts One through Three for breach of contract—are plainly not within the Court's subject matter jurisdiction.*

Virtually all the complexities anticipated by the Court's *Memorandum and Order (3/9/01)* evaporate upon recognition that Counts Four through Six should be dismissed pursuant to Rule 12(b)(6), Fed.R.Civ.P., due to defects that no amendment could cure. Such a dismissal leaves the state-law "breach of Settlement Agreement" counts standing alone. With those claims standing alone, Plaintiffs cannot colorably argue that the Court has "ancillary jurisdiction" jurisdiction over them.

Thus, the only remaining question is whether Plaintiffs have non-frivolously alleged that their claims in Counts One through Three meet the amount-in-controversy requirement. *Amended Complaint*, ¶ 10. Even assuming that the alleged "liquidated damages" provision in ¶ B(5) of the Settlement Agreement is consistent with Massachusetts public policy, it provides for a recovery of *exactly $75,000*—but not more—unless Plaintiffs prove actual damages *exceeding $75,000*. Paragraph B(5) of the Settlement Agreement provides in pertinent part:

[B.] 5. The provisions for injunctive relief shall include a liquidated damages clause providing for the award of judgment in the amount of *the greater of $75,000 or actual damages proven,* should any of the Defendants intentionally and substantially violate any of the provisions of the injunctive portion of this settlement agreement.

*Settlement Agreement.*

Thus, to colorably allege that the jurisdictional minimum is met in this case, Plaintiffs must have a non-frivolous basis for proving that their **actual damages** exceed $75,000. Defendants' Motion to Dismiss demonstrates to a legal certainty that Plaintiffs have no such non-frivolous basis.

Accordingly, Counts One through Three should be dismissed for lack of subject matter jurisdiction.

Docket No. 25 at 4–6 (footnote omitted) (emphasis in original).

### IV. Present Rulings and Reasons for Making Them

#### A. Provisions for Liquidated Damages and for Penalty

One possible interpretation of the total combination of provisions appearing in two separate documents—the judgment and the settlement agreement—is that:

(1) levy of execution on any award of damages *for breach of the contract* between the parties for settlement of Civil Action NO. 96–11425WGY would be limited to the greater of $75,000 and the amount of damages in fact proved (up to the amount of $500,000 stated in the judgment), but

(2) added penalties or other sanctions might be imposed by the court either (i) for violation of the injunction, or (ii) for violation of the settlement agreement.

I conclude, and now rule, that this interpretation of the total combination of relevant manifestations in these documents is at least the most appropriate interpretation. It may even be the only interpretation that a court can determine to be permissible after taking into account all of the stated terms of both documents and the circumstances associated with the execution by the parties of the settlement agreement and the ordering by the court that the judgment be entered on the docket by the Clerk as the final judgment closing Civil Action NO. 96–11425WGY. No other interpretation, in my view, respects fully the considered manifestations of the parties in the language they chose for expressing their agreement to settle and also respects fully the considered rulings of Judge Young.

#### B. Jurisdictional Amount

Defendants assert that the "putative liquidated damages clause's provision for recovery of exactly $75,000 does not satisfy the jurisdictional minimum," now $75,000. Docket No. 18 at 1, ¶ 1a (citing *Anthony v. Security Pacific Financial Services Inc.,* 75 F.3d 311, 315 n. 1 (7th Cir.1996)) (amount in controversy must exceed, not just equal, statutorily specified sum). Defendants then proceed in the next paragraph to assert that the "putative liquidated damages clause is an unenforceable penalty as a matter of law, and so can not supply a factual basis for an amount in controversy allegation." Docket No. 18 at 1, ¶ 1b (citing *PacifiCorp Capital, Inc. v. Tano, Inc.,* 877 F.Supp. 180, 183–84 (S.D.N.Y.1995)).

The First Circuit recently restated the issues federal courts face when a question arises concerning the jurisdictional amount in controversy:

[C]ompeting interests are at stake when federal courts determine whether they

may hear a case. [*Coventry Sewage Assoc. v. Dworkin Realty Co.*, 71 F.3d 1, 3 (1st Cir.1995)].; 14B CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3702 at 16 (1998). On the one hand, the Constitution limits the jurisdiction of federal courts, *see* U.S. Const. Art. III, and Congress has further narrowed our jurisdiction by periodically increasing the amount-in-controversy minimum for diversity cases. This means that we have a responsibility to police the border of federal jurisdiction. *Pratt Cent. Park Ltd. P'ship v. Dames & Moore, Inc.*, 60 F.3d 350, 352 (7th Cir.1995). On the other hand, determining whether a case belongs in federal court should be done quickly, without an extensive fact-finding inquiry. "To make the 'which court' decision expeditiously and cheaply, a judge must simplify the inquiry...." *Id.* With these competing interests in mind, we apply the Supreme Court's longstanding test for determining whether a party has met the amount-in-controversy minimum. *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938) states that:

> The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.

*Id.* at 288–89, 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (footnotes omitted). Under *St. Paul,* a plaintiff's general allegation of damages that meet the amount requirement suffices unless questioned by the opposing party or the court. *See Dep't of Recreation and Sports v. World Boxing Ass'n,* 942 F.2d 84, 88 (1st Cir. 1991). Once the damages allegation is challenged, however, "the party seeking to invoke jurisdiction has the burden of alleging with sufficient particularity facts indicating that it is not a legal certainty that the claim involves less than the jurisdictional amount." *Id.; see also Barrett v. Lombardi,* 239 F.3d 23, 30–31 (1st Cir.2001). "A party may meet this burden by amending the pleadings or by submitting affidavits." *Dep't of Recreation and Sports,* 942 F.2d at 88.

*Spielman v. Genzyme Corp.,* 251 F.3d 1, 4–5 (1st Cir.2001).

Plaintiffs' Motion to Assert Subject Matter Jurisdiction (Docket No. 31), with its accompanying affidavit and exhibits fulfills the plaintiff's burden of alleging particular facts indicating that it is not a legal certainty that the plaintiffs' claim involves less than the jurisdictional amount. I therefore conclude that this court may properly exercise jurisdiction pursuant to 28 U.S.C. § 1332.

I find that plaintiffs' amended complaint makes allegations sufficient to satisfy applicable statutory requirements with respect to jurisdictional amount.

## C. Ancillary Jurisdiction to Enforce a Prior Judgment

■ Paragraph 7 of the proposed Amended Complaint introduces another theory, which is characterized as "ancillary jurisdiction to enforce a judgment" in the case before Judge Young, in which Judge Young, as noted in Part II above, on December 17, 1997, ordered Judgment in accordance with a settlement agreement of the parties.

The caption of that Judgment shows that the case in which it was ordered by Judge Young was Civil Action No. 96–

11425WGY and that the parties to the case and the settlement included two defendants that are not listed in the current complaint pending before me, "Mark Newhall and Grace Tool, Inc." This circumstance raises an issue about whether any of the relief sought by plaintiffs could properly be granted against these two defendants. If resolved against plaintiffs, that resolution might be fatal against only this part of plaintiffs' claims.

Other problems considered below apply more broadly to all relief sought against each of the defendants in this case, on the theory of ancillary jurisdiction to enforce a previous Judgment of this court. The case in which that Judgment was ordered is closed. Chief Judge Young has not ordered it to be reopened, and the circumstances of record now before me in this case do not show any adequate ground for my undertaking to reopen a case closed by another judge of this court.

Remaining for consideration is whether I should make some form of order in aid of enforcement of the final judgment in Civil Action 96–11425WGY, or should conduct additional proceedings before deciding whether or not to do so.

**D. Orders in Aid of Enforcement**

■ The Judgment of December 17, 1997, does not declare that plaintiffs are in any circumstances entitled to have the court vacate the Judgment. Instead, jurisdiction is retained "to enter such further Orders as may be necessary for the carrying out of this Judgment," or enforcing compliance with its terms, or punishing violation of its terms.

Nor does the settlement agreement attached to the Judgment provide for a right to have the agreement rescinded.

I conclude also that no right exists, under Federal Rules of Civil Procedure, Rule 60, to vacate or modify the Judgment on grounds contrary to the Settlement Agreement and the Judgment based upon it. *See* FED. R. CIV. P. 60; *Fortin v. Comm'r of the Massachusetts Dep't of Pub. Welfare*, 692 F.2d 790, 799 n. 11 (1st Cir.1982).

■ It is well established by tradition and practice in the American legal system that a court may make orders in aid of enforcement of its Judgment.

An order in aid of enforcement of a judgment may be included within the terms of the judgment itself. As explained in § 21.1.3, above, this kind of provision is one among the many things a judgment may say.

An order in aid of enforcement of a judgment may, instead, be made as a separate order at the same time as a final judgment is ordered or at a later time. One of the practical reasons for making such an order separately rather than including it as a provision within the final judgment is that things that are said about enforcement tend to be transitory in nature and likely to give rise to a dispute about whether the judgment should be vacated or modified in view of changed circumstances such as partial satisfaction of a money award included in the final judgment. A motion asking the trial court to vacate or modify a separately entered Order in Aid of Enforcement of Judgment is less likely to generate that kind of dispute.

KEETON, *JUDGING IN THE AMERICAN LEGAL SYSTEM*, § 21.1.5 (1999).

■ One form of order in aid of enforcement of a judgment that was included within the Judgment of December 17, 1997, is an injunction. This form of order is, however, subject to a principle of judicial restraint that "injunctive relief should be no more burdensome to the defendant [the enjoined party] than necessary to pro-

vide complete relief to the plaintiffs [the parties complaining of violations of their right]." *Califano v. Yamasaki,* 442 U.S. 682, 702, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979). *See also* KEETON, JUDGING IN THE AMERICAN LEGAL SYSTEM, § 14.8.2(a) n. 237 (citing *EEOC v. Astra USA, Inc.,* 94 F.3d 738, 744–46 (1st Cir.1996)) (cross-references to Jurisdictional and Related Limitations on Scope of Judicial Authority (Abstention)).

For these reasons I conclude that I also have jurisdiction over this matter, at least with respect to consideration of an order in aid of enforcement of Judge Young's judgment.

### V. Summary of Current Rulings

For the reasons explained in this opinion, I conclude

(1) that this Civil Action No., 00–10672–REK, cannot be maintained in this court or in any other court, state or federal, as an independent civil action for breach of the settlement agreement between the parties unless the final judgment in Civil Action No. 96–11425WGY, in accordance with that settlement agreement, is first set aside;

(2) that no adequate ground for setting aside that final judgment has been shown;

(3) that no basis has been shown for finding that further hearings would produce any showing of law and fact that would support an order setting aside that final judgment;

(4) that this Civil Action No., 00–10672–REK, can be maintained in this court, if at all, only as a proceeding in aid of enforcement of the final judgment in Civil Action No. 96–11425WGY;

(5) that Defendants' Motion to Dismiss Counts Four through Six of the Amended Complaint (Docket No. 25, filed April 25, 2001) is DENIED, with the explanation that it is denied only to the extent that this court will consider whether it is appropriate to enter any form of relief in aid of enforcement of Judge Young's final judgment in Civil Action No. 96–11425WGY;

(6) Plaintiffs' Motion to Assert Subject Matter Jurisdiction (Docket No. 31, filed May 25, 2001) is ALLOWED, with the explanation that it is allowed only to the extent that this court will consider whether it is appropriate to enter any form of relief in aid of enforcement of Judge Young's final judgment in Civil Action No. 96–11425WGY; and

(7) that it is appropriate to hold an evidentiary hearing before deciding whether any form of relief should be ordered in aid of enforcement of that final judgment and, if so, precisely what form of relief.

The order below sets a Case Management Conference for scheduling the evidentiary hearing if any party requests it.

### ORDER

For the foregoing reasons, it is ORDERED:

(1) Defendants' Motion to Dismiss Counts Four through Six of the Amended Complaint (Docket No. 25, filed April 25, 2001) is DENIED, because the court will allow a properly supported motion of any party that the court make an order for relief in aid of enforcement of Judge Young's final judgment in Civil Action No. 96–11425WGY, along with a request that the court hold an evidentiary hearing before acting on the motion;

(2) Plaintiffs' Motion to Assert Subject Matter Jurisdiction (Docket No. 31, filed

May 25, 2001) is ALLOWED, with the explanation that it is allowed only to the extent that this court will consider whether it is appropriate to enter any form of relief in aid of enforcement of Judge Young's final judgment in Civil Action No. 96–11425WGY; and

(3) A **Case Management Conference** is set for 2:00 p.m. on Wednesday, December 5, 2001, for the purposes of holding an evidentiary hearing if, no later than four weeks before that date, a motion consistent with Paragraph (1) of this order has been filed.